## DANIEL EASTMAN *vs.* AMOS SANBORN.

The hirer of a horse who, by improperly feeding and watering him, has made him sick, and returned him in this condition to the owner, is liable for his full value, if the owner, by the use of reasonable care and the employment of a suitable veterinary surgeon, who treated him according to his best judgment, was unable to cure him; although such treatment was in fact improper, and contributed to the horse's death.

TORT to recover the value of a horse hired by the defendant of the plaintiff, which soon after his return sickened and died. At the trial in the superior court, before *Putnam,* J., a verdict was returned for the defendant, upon facts and under rulings which are stated in the opinion; and the plaintiff alleged exceptions.

*D. S. Richardson & T. Pearson,* for the plaintiff.

*T. H. Sweetser & W. P. Webster,* for the defendant.

MERRICK, J. It appears from the report that evidence was first introduced, upon the trial, by the plaintiff tending to show that the death of the horse was occasioned by his being overfed and improperly watered by the defendant; and that the latter thereupon produced evidence tending to show that the medicines administered by the veterinary surgeon who was called in to take care of the horse upon his return to the stable, were injurious, and contributed to his death. There was further evidence produced by the parties upon each of these questions, but it was conflicting and inconclusive; and, upon the whole of it being submitted to the jury, the presiding judge was requested by the plaintiff to instruct them that, if the defendant by improper treatment of the horse caused him to be sick, and returned him in that condition to the plaintiff, who thereupon employed suitable persons to take care of him, and they did take care of him according to their best judgment, the defendant was liable for the value of the horse, although such subsequent treatment contributed to his death. But this request was not sustained, and the jury were instructed that, if the death was in part occasioned by such subsequent treatment, the defendant was not responsible, and that this action could not be maintained.

In each of these particulars, the rulings upon which the instructions given to the jury were predicated were erroneous. The hirer of a horse for any specified time, journey or service, like any other bailee, is bound to exercise ordinary diligence in the use and care of the property lent to him, and is responsible for all the injurious consequences resulting from a culpable neglect to do so. Story on Bailm. § 399. *Bray* v. *Mayne,* Gow, 1. The death of a horse must be considered as one of the direct consequences of ill treatment by such culpable neglect, if, being made sick by it, he dies immediately afterwards, notwithstanding reasonable care is in the meantime exerted, and reasonable means are resorted to and applied for his preservation and cure. The owner, upon the return of an animal to him under such circumstances, is undoubtedly bound to use such care and make such efforts ; and if he fails to do so, all consequent loss by death or otherwise must fall upon him. In the case of *Dean* v. *Keate,* 3 Camp. 4, it was held by Lord Ellenborough that the hirer is not responsible for any mistakes which a farrier, whom he calls in to attend to a hired horse, sick at the commencement, or made so without his fault in the progress, of the journey, may commit in the treatment. And this upon the principle that, as he is bound to use due care, and having in this respect discharged his whole duty by employing a suitable person to render assistance in the exigency which had arisen, he is in no fault, and ought not therefore to be held liable for any resulting consequence. In such case the loss must fall upon the owner. The application of the same principle to the converse proposition makes the hirer liable for the entire ultimate loss, where, having first by his inattention and carelessness injured the property, and afterwards returned it in a damaged condition to the owner, the latter is unable, by the exercise of reasonable care, either to preserve or to derive any benefit or advantage from it. All that can be required of the lender, whose property is injured by the culpable neglect or misconduct of the borrower, is, that he shall use all reasonable means in his power to avert the consequences, or to diminish the effect of the injury as far as he can Where this is done, the person by whom the wrong is

committed must be responsible for all the damage which ensues from it. Thus in the case of *Tuttle* v. *Holyoke*, 6 Gray, 447, it appearing that the plaintiff's horse was thrown, by reason of a defect in the highway, on to and across a rail fence standing by the side of the road, and was removed therefrom by being rolled over the fence, by four or five men, into the adjoining lot, and that his leg was broken, the defendants contended that they were not liable if the leg was broken by the fall when the horse was so rolled over; but it was determined that they were liable for the value of the horse even if the disaster occurred in that manner, if the persons who attempted to extricate him from the perilous position upon the fence into which he had been thrown did in all respects use reasonable care in their efforts to afford him relief. And in *Ingalls* v. *Bills*, 9 Met. 1, it was to the same effect held that the proprietors of a stage coach were amenable in damages to a passenger who, by reason of a defect in the construction of their carriage, for which they were responsible, was placed in such a situation of peril as to make it a reasonable precaution on his part to leap from the carriage, and who by so leaping sustained a serious injury, although he would have been perfectly safe if he had remained quietly in his seat. See *Commonwealth* v. *Hackett*, 2 Allen, 136.

Thus in the present case, where the horse hired by the defendant, having been made sick and diseased by his carelessness and inattention, was returned to the plaintiff, it became his duty to take reasonable care of the horse, and to use ordinary diligence in seeking for and applying proper remedies for his restoration. This was all that the law required of him, because it was all that he could in fact do. There are no known means which can be resorted to with any absolute certainty that they will prove sufficient to eradicate disease and bring back health, or prolong the existence of animal life. Notwithstanding the utmost efforts of persons the most proper to be called on to render assistance in such exigencies, and most competent to afford it, fatal results may follow from their action or prescription, because there is no possibility of guarding effectually against injurious consequences which are the result of mere errors of

Eastman *v.* Sanborn.

opinion or mistakes in judgment. And therefore if the plaintiff did, on the return of the horse, employ suitable persons to take care of him, and they were faithful in the performance of the service in which they were employed, and the horse died notwithstanding their efforts to save and restore him, the death must be attributed to the disease caused by the culpable neglect of the defendant, even though the remedies applied in the course of the treatment, instead of having their intended effect, aggravated the disease and contributed in some degree to its fatal termination.

From these considerations it is apparent that, upon the facts assumed in the hypothesis upon which the instructions here asked for by the plaintiff were predicated, the defendant is liable for the full value of the horse, and that damages to that extent may be recovered of him in this action. The declaration alleges that he carelessly, negligently and improperly overfed and watered the horse, by means whereof he died. When it has first been shown that the alleged carelessness and negligence caused the horse to be sick and diseased, the further averment that his death was occasioned by the same means will be established by proof that he died of such disease, if due care and diligence to heal and restore him to health were used by the plaintiff, although the means resorted to for such purpose unfortunately and accidentally contributed in part to the fatal result. It is obvious, therefore, that the instructions to the jury were erroneous, and that the exceptions taken by the plaintiff must be sustained.