SMITH & ONEAL, plaintiffs in error, *vs.* FRANCIS A. FROST, defendant in error.

(TRIPPE, J., did not preside in this case on account of relationship to one of the parties.)

1. Where cotton was stored with the defendants as warehousemen, and the houses containing the same were seized by the military authorities of the Confederate States, to be used as hospitals, and the cotton thrown into the streets, where it was seen by one of the defendants, and the facts show a strong probability that it was also seen by the plaintiff, and the court charged the jury that though the cotton had been thrown out of the defendants' house by the *vis major*, yet if the defendants could, by the exercise of ordinary care, have recaptured and taken care of it, they were liable, and that the measure of damages was the value of the cotton at the time of the demand:

*Held*, that under the facts this was error. The judge should have qualified this charge by adding, unless the plaintiff knew, or had good reason to believe that his cotton or a portion of it was thrown out by the military authorites, in which case, if he could have saved it by the exercise of ordinary care, the defendants would not be liable, and that the jury, in determining the question of ordinary care, were to take into consideration the situation of the defendants and their ability or want of ability, to exercise ordinary care in the matter.

2. If the defendants abandoned the care of the cotton when it was thrown out of their buildings and were guilty of want of ordinary care in not retaking it, the measure of damages is the value of the cotton at the time of the abandonment and not at the time of the demand.

Warehousemen.   Damages.   Before Judge BUCHANAN. Troup Superior Court.   November Term, 1872.

Smith & O'Neal had, in 1861, 1862 and 1863, taken in store, as warehousemen, various lots of cotton for Frost, the plaintiff below.   In 1865, after the war, Frost demanded the cotton.   It then appeared that from eighteen to twenty-eight bales were missing, and suit was brought against the defendants as warehousemen, for a breach of duty in failing to keep safely the plaintiff's cotton.

The defendants set up that a considerable portion of defendants' cotton was stored, with his knowledge, in certain houses and stables, distant from the warehouse, which defendants had rented for the purpose after theirs was filled.   The evidence showed that their houses were seized by the Confederate military authorities shortly after the battle of Chickamauga, to be used as hospitals; that the cotton was thrown out in the streets; that after some time, the town authorities had removed it to a shelter over which defendants had no control. The evidence further showed that, at the time the cotton was thus thrown out, the defendants and the plaintiff were in the Confederate army as soldiers; that they had all applied for leave to come home and see to this very matter of which they had heard; that the plaintiff did get leave, and came home, but both the defendants failed; that the plaintiff removed and took care of other cotton of his which had been thrown out of other houses.   One of the defendants came home without leave and saw the cotton in the streets, but did not take any steps to take care of it.

The defendants stated on oath that the plaintiff knew some of his cotton was stored in the houses alluded to; that he had seen them storing there day by day, and that a portion of his cotton was received by them and receipted for at said houses,

and that they had notified him, before he left the army to come home, that they would not be responsible for the cotton.

The plaintiff testified that he did not know any of his cotton had been removed from the warehouse to these houses, but he did not affirmatively deny either his knowledge that a portion of his cotton was stored in those houses, or that defendants had notified him that they would not be responsible for it.

The court charged the jury, amongst other things, as follows:

"If you believe from the evidence that the cotton, by an irresistible power, was thrown out of the houses in which it was deposited, and that the defendants, by the use and exercise of ordinary diligence, could not repossess themselves of it, and secure and preserve it, the defendants are not liable. But if you believe from the evidence that the defendants, by the use and exercise of ordinary diligence, could have possessed themselves of the cotton and have secured and preserved it, then the defendants are liable for the value of the cotton at the time of the demand, if a demand therefor was made by the plaintiff."

To this charge the defendants excepted.

The jury found for the plaintiff $4,000 00. The defendants moved for a new trial, on account of error in the above charge. The motion was overruled, and they excepted.

A. W. HAMMOND & SON, for plaintiffs in error.

1st. If this action was trover, the verdict should have been in the alternative: Code, secs. 3028, 3563, 3564.

2d. If it was not trover, demand was not pertinent to the cause, so far as fixing the measure of damages was concerned. Demand is only evidence of prior conversion: Brown's Actions at Law, 316, and authorities cited, viz.: Wilton *vs.* Girdlestone, (5 B. & A., 847;) 7 E. C. L. R., 460; 2 Modern R., 244.

3d. Conversion is the gist of the action. Value at date of conversion, and interest thereon, is measure of damages generally: Schley *vs.* Lyon *et al.*, 6 Ga. R., 535, (3.) Highest

value between conversion and trial can be had only when defendant keeps the property: Dorsett *vs.* Frith, 25 Ga. R., 541, 543.

FERRELL & LONGLEY, for defendant.

McCAY, Judge.

Upon the question so elaborately argued in this case, as to the weight of the evidence, and whether the verdict is for the proper amount according to the testimony, we express no opinion, since, under our judgment, there is to be a new trial, on other grounds.

1. The charge does not do full justice to the defendant below, under the evidence. The general principle laid down by the judge as to the duty of the warehouseman to use ordinary care, even when his custody of goods is interfered with by a *vis major*, is right enough, and is supported by authority as well as by the principles of justice. But there is a large element in the evidence that the charge ignores. The condition of things as disclosed by the evidence is peculiar. Not only was the cotton turned into the street by the Confederate authorities, but the defendants themselves were under duress. This the plaintiff knew. He was at home, was cognizant of the seizure of this cotton at the time it was done, and if he knew this was his cotton, or by the exercise of such prudence as a man of ordinary prudence usually exercises about his affairs, might have known it was his cotton, and could have saved and protected it, we think he is legally and justly chargeable himself with the loss. It occurs to us that common justice would require the owner, under such circumstances, to interfere for his own protection. He has no right to see his property go to ruin, relying upon his remedy over against the warehouseman. Especially is this true if he knew, as he did, that the defendants were in the Confederate army and themselves under duress by a *vis major*. It seems to us that an owner of cotton, who, knowing that the warehousemen were thus situated, should see the cot-

ton he had stored with them thus thrown into the street, has duties of his own to perform, and that if he neglected to perform them he has no remedy.

2. Nor do the facts of this case—as that one of the defendants was in the county—make this rule inapplicable. The circumstances of his presence were peculiar; he was absent without leave. We all know the position at that time of a man absent without leave from the army. He was constantly in danger of arrest. There was a constant scrutiny of papers by the enrolling officers and their underlings, so that even a sick or wounded soldier was compelled to be very particular to have his papers all right. And we think the judge, in charging the jury as to the liabilities of the defendant, if by ordinary care they could have saved the cotton, ought to have qualified his charge by letting the jury consider from the evidence whether the defendants were in such a situation as to be capable of exercising ordinary care. Duress by the *vis major* of the person, so as that he cannot exercise the ordinary care to save the goods, is just as much a *vis major* as a violent seizure of the goods.

Judgment reversed.