**Fruehauf Trailer Company, Appellee, v. Albert M. Lydick, Appellant.**

**Gen. No. 43,129.**

Heard in the second division of this court for the first district at the June term, 1944. Opinion filed December 19, 1944. Rehearing opinion filed February 13, 1945. Released for publication March 5, 1945.

SEYMOUR M. LEWIS, of Chicago, for appellant; THEODORE RUBOVITS and JULIUS M. LORENZ, both of Chicago, of counsel.

M. M. LOMAN, of Chicago, for appellee; Albert E. Jenner, Jr., counsel on rehearing.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This action was brought by plaintiff, Fruehauf Trailer Company, to recover a balance of $336.98 claimed to be due from defendant, Albert M. Lydick, for repairs made to one of his trailers. Defendant filed a counterclaim for damages alleged to have resulted from plaintiff's wrongful refusal to deliver to him a bill of sale for another and different trailer which he had purchased from the Fruehauf Trailer

Company and fully paid for. The case was tried before the court without a jury and judgment for $211 was entered in favor of plaintiff on its statement of claim and judgment was entered against defendant on his counterclaim. Defendant appeals from both judgments.

Although plaintiff's statement of claim averred that the balance due it for repairs to one of defendant's trailers was $336.98, at the opening of the trial its counsel offered to prove that the balance due for such repairs was $211, which offer defendant accepted.

Defendant's amended counterclaim alleged substantially that on February 15, 1941 he purchased a Fruehauf trailer from plaintiff on a conditional sale contract; that he completed the payments thereon on September 24, 1942; that "since September 24, 1942, the defendant has requested from the plaintiff a bill of sale or other evidence of title to the said trailer but the plaintiff has refused and still refuses to give the defendant a bill of sale to the said trailer and has based its refusal on the unwarranted grounds that the defendant was indebted to the plaintiff on the claim herein sued upon"; that "because of the plaintiff's refusal to give the defendant the bill of sale or other evidence of title, the defendant has been unable to obtain an Illinois license for the said trailer and has, therefore, been unable to use the said trailer"; that "there is a great demand for the use of trailers such as defendant's during the present emergent conditions and has been since the start of the war and if the defendant had had the use of the said trailer since October, 1942, he would have earned from the use of the said trailer approximately $10.00 per day"; and that "plaintiff has thereby deprived the defendant of the use of the said trailer and prevented him from earning a sum approximating $2,100.00 and this action upon the part of the plaintiff has been wilful and malicious and unwarranted." The counterclaim concluded with

a prayer for the allowance to defendant of $2,100 damages against plaintiff. Plaintiff's answer to the amended counterclaim consisted merely of a general denial of the facts alleged therein.

The conditional sale contract contained the following provision:

"Title to said goods is now and shall remain in Seller until the sum aforesaid, with interest, shall be fully paid. When the total purchase price herein provided for has been paid and all conditions hereunder have been satisfied by the buyer, it is agreed that the title papers to said goods, together with proper evidence of satisfaction of this contract, shall be delivered to the buyer."

Section 17 of the Illinois Motor Vehicle Act (par. 18, ch. 95½, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 85.018]) provides in part as follows:

"Upon the sale of a motor vehicle by a manufacturer or dealer, he shall thereupon give to the purchaser a bill of sale setting forth the name and address of the purchaser, the date of purchase, together with a description of such motor vehicle . . . ."

Defendant made his final payment on the trailer on September 24, 1942 and at that time he did not receive a bill of sale for said trailer, although he demanded same. His persistent and repeated demands for a bill of sale over a period of several months were evaded and he finally received a letter from plaintiff, dated January 22, 1943, which contained the following statement:

"You asked that if we are unable to find this title to please send you a notarized bill of sale, covering this unit. However, in checking my records, I find that you are indebted to us for approximately $350.00 which has been turned over to the United Mercantile Agency, in Louisville, Ky. for collection and until this account is settled in full, we do not see our way clear to issue a title to this trailer.

"If you will take care of this item with the United Mercantile Agency and have them advise us that the account has been settled, we will then furnish you with a bill of sale."

Prior to the time the trailer in question was completely paid for it had not been operated in Illinois but when the final payment was made thereon defendant apprised plaintiff that he wanted to use it in this state. Plaintiff, being engaged in the manufacture and sale of trailers and having a place of business in this state, knew or should have known that defendant could not operate his trailer in Illinois without procuring a license therefor and that before he could secure a license he first had to get a certificate of title, which the secretary of state would not issue to him without a bill of sale showing his title to and ownership of the trailer. There is evidence in the record that defendant and his wife attempted on numerous occasions to secure a certificate of title and license without a bill of sale but they were unsuccessful in such attempts because the secretary of state was not authorized to receive an application for a certificate of title unless the application included "a bill of sale or statement of transfer by the seller." (Sec. 4(b), par. 77, ch. 95½, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 85.078, subpar. (b)]).

It will be noted from the foregoing excerpt from plaintiff's letter to defendant of January 22, 1943 that the only reason advanced therein for its refusal to issue a bill of sale to defendant was the latter's failure to pay plaintiff an indebtedness of $350. It appears that the indebtedness referred to was for repairs made to a different trailer and, while defendant admitted that he owed plaintiff for work done on the other trailer, he insisted that the amount claimed for such repairs was exorbitant. That such claim was exorbitant is indicated by plaintiff's willingness upon the trial to accept $211 for the repairs, although in its letter of

January 22, 1943, it claimed $350 therefor and in its statement of claim $336.98. Defendant was willing and anxious at all times to pay what he actually owed for the repairs. In any event the transaction involving plaintiff's claim for repairs was entirely unrelated to defendant's right to a bill of sale for the trailer which he had fully paid for. Plaintiff's withholding of the bill of sale until defendant paid the admittedly exorbitant charge for repairs to another trailer can only be regarded as a sharp and tricky practice adopted by it to compel defendant to pay an unfair bill.

That there was no justification for its refusal to give defendant a bill of sale for the trailer must be conceded by plaintiff, since it offered no valid explanation or reason for such refusal in the trial court and it offers none here. There can be no question but that by reason of its wrongful conduct in refusing to issue to defendant a bill of sale, "title papers" or "evidence of the satisfaction of the contract" plaintiff breached its contract and violated its statutory duty and thereby unlawfully deprived defendant of the use of his trailer. Neither can there be any question but that defendant is entitled to recover damages for the loss of the use of his trailer. This brings us to the proper measure of damages applicable to this case, which presents a *sui generis* situation as to damages due to war conditions.

Although the trial judge apparently recognized that the enforced idleness of defendant's trailer resulted from plaintiff's wrongful conduct in deliberately refusing to issue a bill of sale therefor, he held that defendant was not entitled to recover any damages and stated his reasons for so holding as follows:

"It seems to me that the damages claimed are too remote or indirect. If defendant was entitled to a Bill of Sale or other title papers after payment of the contract had been made in full and such Bill of Sale or other title papers, were refused, then it seems to me

the measure of damages would be the fair and reasonable costs of compelling the plaintiff to do what it should have done under the contract. The damages claimed are not the natural and probable result of such refusal.'' The trial judge apparently assumed that defendant's only recourse was under the provisions of the Uniform Motor Vehicle Anti-Theft Act, hereinafter discussed, which, as will be seen, did not apply.

In its endeavor to sustain the refusal of the trial court to find the issues in favor of defendant on his amended counterclaim, plaintiff contends that ''defendant's failure to obtain an Illinois title and license resulted from his own neglect, not from plaintiff's refusal to give him a bill of sale,'' and cites in support of such contention the following portion of section 4(b) of the Uniform Motor Vehicle Anti-Theft Act (par. 77, ch. 95½, Ill. Rev. Stat. 1943 [Jones Ill. Stats. 85.078, subpar. (b)]):

''. . . Where application is made for a certificate of title for a new or used motor vehicle not previously titled in this State and not sold or transferred under any of the above enumerated conditions establishing a prima facie case of ownership in the purchaser or transferee, the Secretary of State shall not issue a certificate of title therefor, but shall, upon payment to him by said applicant of the sum of twenty dollars ($20.00) as a fee for title investigation, cause a thorough investigation to be made of the source and antecedents of such title and the right of such applicant to a certificate of title.

''If, as a result of any investigation of title herein authorized, the Secretary of State is satisfied as to the validity of the title and ownership of the applicant, he shall issue a certificate of title in accordance with the terms of this Act.''

This portion of section 4(b) of the statute has no application to the situation presented here. Reference is made therein to motor vehicles ''not previously titled

in this State and not sold or transferred under any of the above enumerated conditions establishing a prima facie case of ownership.'' The sale of the trailer to defendant was made under one of the ''above enumerated conditions'' establishing a prima facie case of ownership in him but he was unable to present prima facie evidence of his ownership solely because of plaintiff's unwarranted and wrongful refusal to give him the bill of sale he was legally entitled to receive. Preceding the portion of section 4(b) quoted by plaintiff that section also contains the following provision: ''Whenever application is made for a certificate of title for a motor vehicle for which a certificate of title has not previously been issued in this State, such application shall include a bill of sale or statement of transfer by the seller. . . .'' Because of defendant's inability to include a bill of sale in his application for certificate of title the secretary of state was neither authorized nor required under section 4 (b) of the Motor Vehicle Anti-Theft Act to accept an application from him for a certificate of title or to investigate his title to the trailer. Our attention is also called to sections 9(a) and 9(b) of the Uniform Motor Vehicle Anti-Theft Act (par. 82, ch. 95½, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 85.083, subpars. (a), (b)]), which provide in part as follows: ''If the Secretary of State shall determine that an applicant for a Certificate of Title to a motor vehicle is not entitled thereto, he may refuse to issue such certificate and to register such motor vehicle . . . . Any person denied a Certificate of Title . . . may, within ninety (90) days thereafter, file a petition in the Circuit Court . . . for a hearing or review, and such court . . . shall thereupon hear such cause and enter such order as may be proper.'' The foregoing provision for review by the circuit court of the action of the secretary of state in refusing to issue a certificate of title cannot apply here since, because of plaintiff's wrongful con-

duct, defendant never could or did present a proper or valid application for a certificate of title upon which the secretary of state was authorized, or required to take any action.

Other than its reliance upon sections 4(b) and 9(a) and 9(b) of the Uniform Motor Vehicle Anti-Theft Act, plaintiff makes no effort in its brief to support the proposition advanced by the trial court that "the measure of damages would be the fair and reasonable costs of compelling the plaintiff to do what it should have done under the contract." The trial court did not point out and neither does plaintiff in its brief any prompt and certain remedy available to defendant to compel plaintiff to give him a bill of sale.

It is contended that "the damages sought to be recovered by defendant were speculative and remote, for which no recovery could be had." It is sufficient answer to this contention to state that plaintiff knew that defendant was in the trucking business, that there was an unusual demand for the use of trailers of this kind and that defendant would suffer loss if he was unable to use the trailer because of its refusal to give him a bill of sale so that he could procure a certificate of title and a license. Not only are the damages claimed by the defendant neither remote nor speculative but they are such as plaintiff must have known would result directly and as a natural and probable consequence of its refusal to issue the bill of sale.

Plaintiff contends that "defendant failed to mitigate the alleged damages and failed to exercise reasonable care and diligence to avoid loss and to minimize any resulting damages." We are not unmindful of the rule that a party being damaged cannot stand by and suffer the injury to continue and increase, without reasonable effort to prevent further loss. But defendant was helpless under the circumstances. He not only made every reasonable effort but every possible effort to prevail upon plaintiff to issue the bill of sale

to him. It appears conclusively that defendant was powerless to do any more than he did do to prevent his damages from increasing as a result of plaintiff's continued wrongful conduct. It was solely within the control of plaintiff to prevent any injurious consequences to defendant by giving him the bill of sale when he was entitled to it. It was also solely within its control to give him a bill of sale on any day thereafter up to the time of the trial and thus prevent his damages from continuing and increasing. It is stated in defendant's brief and not denied that plaintiff still refuses to issue the bill of sale. Defendant was even precluded from selling the trailer and thereby mitigating the damages because he could not sell it without a certificate of title.

The wrongful conduct of plaintiff had its inception in its endeavor to intimidate and compel defendant to pay an unfair and exorbitant bill for repairs to another trailer by refusing to issue to him a bill of sale for the trailer involved in his counterclaim and, as already shown, such refusal and continued refusal utterly disregarded plaintiff's contractual and statutory duty. Without fault or neglect on defendant's part and solely by reason of the deliberate, wrongful and wilful conduct of plaintiff, Lydick was deprived of the use of his trailer and we are impelled to hold that plaintiff should be required to pay such damages as defendant sustained as a result of the loss of the use of his trailer.

In our opinion the proper measure of damages for plaintiff's wrongful conduct in depriving defendant of the use of his trailer is the reasonable use or rental value thereof (sec. 83 (c), p. 600, 25 C. J. S.). Defendant's uncontradicted evidence shows clearly that the reasonable use or rental value of this twenty-four foot trailer was from $7 to $10 per day. Having shown the reasonable use or rental value of the trailer per day, it was also incumbent upon defendant to prove

the actual number of days it could and would have been used in his business or could and would have been rented, if he had a license for it.

Defendant Albert M. Lydick testified that from the time he purchased the trailer in question until it was completely paid for and plaintiff refused to give him a bill of sale for it, he used it continuously seven days a week; that from December, 1941 to the time of the trial "there has been a big demand for trailers and tractors, being that the country is at war, there has been a terrific demand because O.D.T had closed all building of new equipment, and even old equipment is pulled out of the junk yards and reconditioned in order to do hauling today. The equipment is very scarce . . . I have not been able to license it and I have never been able to use it" since "the forepart of October, 1942"; and that from "the beginning of October, 1942 down to the present time," requests or demands were made of me "for the use of a trailer for hauling or for entering into hauling contracts or for doing trucking and leasing . . . the demands come in there regularly, I have had as high as two a day, and there was not a week went by but what I would get a demand for the equipment."

Earl Beaty, one of the three experts who testified as to the fair and reasonable use or rental value of the trailer, also stated that "in December of '41 the Government froze all sales on the selling of new equipment, tractors and trailers and due to that fact it created an unusual demand for the old equipment and due to the fact that there is considerable tonnage with new manufacturing, the operators earned considerably more money the following years, than previously"; and that there was a steady demand "from then until now."

Eleanor Lydick after stating that she was the bookkeeper and general helper of her husband in his trucking business, testified in part on her direct examination as follows:

"Q. Are you familiar with the trailer that is in dispute here between Fruehauf and yourself? A. Yes, I am. Q. Do you know the trailer? A. Yes. Q. You have seen it? A. Yes. Q. Originally and continuously? A. Yes. Q. Since October 1942 and before? A. Yes. Q. Has that trailer been used? A. We used it for a period of time . . . and it amounts to seventy-five days, to be exact. Q. Seventy-five days? A. Yes sir. . . . Q. Mrs. Lydick, to your knowledge, do you know how many days this twenty-four foot van of Fruehauf that is in dispute here was not used by you or by Mr. Lydick in your business because of your inability to obtain a certificate of title and a license? A. I figured out 397 days. Q. 397 days? A. Yes. Q. When does that start? A. That starts on October 16th of 1942. Q. And terminates when? A. Terminates the end of January of this year [1944]. . . . Q. And does that exclude the 75 days that you have referred to? A. Yes, it does. Q. And so there is a net of 397 days? A. That is right.''

It also appeared that defendant used the trailer illegally without an Illinois license for the 75 days Mrs. Lydick referred to in her testimony; and that after defendant had rented another trailer for two or three weeks at $72 a week, he purchased same and used it in his business for a considerable period and then sold it at a profit.

The foregoing comprises all the evidence in the record concerning the constant demand for the use of trailers generally and for the use of the trailer in question. Not only was it shown by Lydick's testimony that there was a persistent, steady demand for the use of his trailer but his wife testified that the trailer "was not used" in defendant's trucking business for 397 days between October 16, 1942 and January 31, 1944, solely because he was unable "to obtain a certificate of title and a license." Mrs. Lydick's testimony made out a prima facie case that the trailer could and would have been used 397 days in her husband's busi-

ness if plaintiff had not wrongfully deprived him of its use by its unwarranted conduct in refusing to give him a bill of sale. Plaintiff offered no evidence to contradict her testimony and neither was it impeached in any manner.

As has been seen, at some unstated time during the period involved herein defendant purchased another trailer which he used in his business and later sold at a profit. Plaintiff contends that defendant is not entitled to damages for loss of the use of the trailer in question during the period the newly purchased trailer was used in its place and stead. There is not the slightest merit in this contention. The mere fact that defendant made an advantageous purchase of another trailer instead of renting one to use in his business in place of the Fruehauf trailer cannot inure to plaintiff's benefit. The fact still remains that defendant lost the use of his trailer during said period, when it could have been used or rented if he had a license for it. On the whole, plaintiff's theory seems to be that it could wrongfully prevent the use of defendant's trailer indefinitely and until it had become worthless by refusing to issue the bill of sale to him and the defendant would still have no recourse against it for damages.

We hold that the evidence submitted by defendant meets the test of definiteness required by law to support an award of damages to him on his amended counterclaim for the loss of the use of his trailer for 397 days, which loss at the rate of $7 per day, amounts to $2,779. Said 397 days does not include the 75 days' illegal use of the trailer by defendant without an Illinois license. Inasmuch as defendant's *ad damnum* was stated to be $2,100 in his amended counterclaim, that is the maximum amount of damages that may be allowed him on said counterclaim. Deducting $211, the amount of damages allowed plaintiff on its statement of claim, from the $2,100 which defendant is en-

titled to recover on his amended counterclaim, leaves a balance of $1,889, for which amount judgment should be rendered against plaintiff and in favor of defendant.

Inasmuch as this case was tried without a jury it would serve no useful purpose to remand it to the trial court.

For the reasons stated herein the judgments of the municipal court of Chicago are reversed and judgment is entered here for $1,889 against plaintiff and in favor of defendant on the latter's amended counterclaim.

*Judgments reversed and judgment here.*

FRIEND and SCANLAN, JJ., concur.

## ON REHEARING.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This action was brought by plaintiff, Fruehauf Trailer Company, to recover a balance of $336.98 claimed to be due from defendant, Albert M. Lydick, for repairs made to one of his trailers. Defendant filed an amended counterclaim for damages alleged to have resulted from plaintiff's wrongful refusal to deliver to him a bill of sale for another and different trailer which he had purchased from the Fruehauf Trailer Company and fully paid for. The case was tried before the court without a jury and judgment for $211 was entered in favor of plaintiff on its statement of claim and judgment was entered against defendant on his counterclaim. Defendant appealed from both judgments. In an opinion filed December 19, 1944 we reversed both judgments and entered judgment here for $1,889 against plaintiff and in favor of defendant on the latter's amended counterclaim. We arrived at the amount defendant was entitled to recover by awarding him $2,100 damages and deducting there-

from $211, the amount of damages the trial court properly allowed plaintiff on its statement of claim. Plaintiff's petition for rehearing was allowed January 3, 1945. Said petition concedes plaintiff's liability to defendant as alleged in his amended counterclaim. The only questions now before us pertain to the amount of damages defendant is entitled to recover and the proper measure of damages to be applied.

Defendant purchased a twenty-four foot automobile trailer for use in his trucking business from plaintiff on a conditional sale contract. When he made his final payment thereon on September 24, 1942, plaintiff wrongfully refused to give him a bill of sale for such trailer as it was obligated to do under the terms of the purchase contract. Plaintiff had not given defendant a bill of sale for the trailer up to the time the trial of this case commenced on February 4, 1944. By reason of plaintiff's wrongful refusal to give defendant the bill of sale he was precluded under the provisions of the Illinois Motor Vehicle Act (ch. 95½, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 85.001 *et seq.*]) from procuring a certificate of title to the trailer or a license to operate same in this state. Thus defendant was deprived of the use of his trailer from September 24, 1942, when he made his final payment on same and his demand for a bill of sale was refused, until February 4, 1944, the date of the trial. However, defendant presented proof of his damages only for the period from October 16, 1942 to January 31, 1944.

Plaintiff suggests that in our original opinion we overlooked the point made in plaintiff's brief that ''in including in its judgment alleged damages occurring subsequent to the filing of defendant's counterclaim this court overlooked the well settled, affirmative rule of law that where the injury and damages sued for are the result of repetition or continuing acts of the same class, recovery is limited solely to the actual damages suffered to the date of the commencement of suit and

that no recovery may be had for damages suffered thereafter to the date of trial." This precise point was not made in plaintiff's brief but it did contend therein that "defendant cannot recover on his counterclaim for any claim or demand which was not due at the time the plaintiff brought its action." One case, *Ellis v. Cothran,* 117 Ill. 458, was cited in support of this latter contention and that case, in our opinion, had no application to the factual situation presented here. Furthermore, there was nothing in plaintiff's argument in its brief under this point that tended in anywise to show that there was any merit in it. We did not overlook the point as made in plaintiff's brief but disregarded it as not meriting serious consideration.

We will now consider the point first above quoted as made in the petition for rehearing, although it differs in some respects from the comparable point made in plaintiff's brief.

In its petition for rehearing plaintiff cites 25 C. J. S. (sec. 193, p. 908) for the following rule:

"Where the injury sued for is caused by a mere repetition or continuing of acts of the same class, plaintiff's recovery is limited to the damages resulting from such of those acts as were done before the bringing of the suit."

Our attention is called to a number of cases in this and other jurisdictions which it is asserted support this rule. It may be agreed that they do, but the rule applies, as stated therein, "where the injury sued for is caused by a mere repetition or continuing of acts of the same class." That rule can have no application to the facts in this case. Here the injury was caused not by "repetition or continuing of acts of the same class" but by one act—plaintiff's wrongful conduct in refusing to deliver the bill of sale to defendant when he had completely paid for the trailer. It cannot be said that, because plaintiff was unyielding and did not see fit up to the time of the trial to reconsider its re-

fusal to give defendant a bill of sale, such failure to reconsider constituted "repetition or continuing of acts of the same class." While the injurious effects and consequences of plaintiff's wrongful conduct continued after this suit was filed and after defendant had filed his counterclaim, there was no repetition or continuance of acts in this case as contemplated in the aforesaid rule. Plaintiff's attitude can best be characterized as an inflexible determination from the outset to refuse to give defendant a bill of sale, although he was entitled to same under the contract of purchase.

The rule plaintiff relies upon was selected from a number of rules (25 C. J. S., sec. 193) applicable to various situations in which damages resulting before or after the commencement of an action may or may not be recoverable therein. Two other rules are stated in the same section of 25 C. J. S., either of which, in our opinion, is applicable here. We quote not only these two rules but the rule plaintiff relies upon as it appears in the text of section 193, 25 C. J. S., at p. 908:

"Plaintiff may recover for any damage which manifests itself up to the time of the verdict, where the thing complained of is a particular act occasioning a tortious injury to the person, or property, or where the wrong consists in the breach of a contract. Where the injury sued for is caused by a mere *repetition or continuing of acts of the same class,* plaintiff's recovery is limited to the damages resulting from such of those *acts* as were done before the bringing of the suit. . . . Where, however, the *same wrongful act* produces both immediate and future injury, independent of any subsequent wrongful acts, all damages resulting before or after commencement of the action may be recovered therein." (Italics ours.)

The wrong in this case "consists in the breach of a contract" by plaintiff and the damages resulting to defendant before and after the commencement of this action were produced by the same wrongful act "independent of any subsequent wrongful acts."

In Sutherland on Damages, 4th Ed., sec. 113, the author says at p. 388:

"It is not essential, however, that all the injurious effects of the act which constitutes the cause of action should have been developed and suffered before suit; it is immaterial to the right to recover for them when the effects manifest themselves with reference to the time of bringing the suit. But it is practically material to the plaintiff that the effects be so manifest, before and at the time of the trial, as to be susceptible of proof. The actual effects down to the time of the trial are provable; and whether those which may ensue later may be taken into account will depend on whether they are imminent and sufficiently certain. . . . But whether continuing damages may be computed after the commencement of the suit will depend on whether they proceed from the act complained of in that suit as the cause of action, or from some later act constituting a fresh cause of action."

There can be no question but that plaintiff's breach of its contract and wrongful refusal to deliver a bill of sale to defendant when he was entitled to receive same on September 24, 1942 deprived him of the use of his trailer from said date up to February 4, 1944, the date of the trial. There is no merit in plaintiff's instant contention and we hold that defendant is not limited to the recovery of damages suffered by him prior to the date of the commencement of this suit or the filing of his counterclaim but that he is entitled to recover all damages resulting before or after the commencement of this suit and up to the date of trial.

The second point made in plaintiff's petition for rehearing is that "in allowing damages at the rate of $7.00 per day, this Honorable Court overlooked or misapprehended the fact that defendant's own evidence established his loss, if any, to be an amount substantially less than $7.00 per day."

On the basis of evidence presented by defendant, which was recited in our original opinion, we held that

it was established with the definiteness required by law that the reasonable use or rental value of defendant's trailer was $7 a day. Plaintiff presented no evidence but insists that defendant's own evidence shows that the reasonable use or rental value of the trailer was not $7 a day but $4.83 a day.

Defendant testified that by reason of his experience in using the trailer in question and other trailers over a long period of time and particularly by reason of his experience in the use of another trailer of the same size, style and type for the one-year period from March 15, 1942 to March 15, 1943, he determined that the reasonable use or rental value of his Fruehauf trailer was from $7 to $10 a day. He further testified that the use or rental value of a trailer such as that involved herein is figured on the basis of 18 to 20 per cent of the gross freight revenue earned. The record discloses that the gross revenue earned by the aforementioned trailer over the one-year period from March 15, 1942 to March 15, 1943 was $9,804.05. Plaintiff computed its use or rental value at $4.83 a day by taking 18 per cent of $9,804.05 or $1,764.75 as the use or rental value of that trailer for the year and dividing $1,764.75 by 365, the number of days in a year.

After reconsidering all the evidence in the record bearing on the question as to the reasonable use or rental value of the trailer per day, we have concluded that there is merit in plaintiff's contention that the evidence showed that the average net use or rental value of the trailer was $4.83 a day, as computed by it, and that $4.83 per day is the proper measure of defendant's damages for the loss of the use of the trailer.

The evidence as to the constant demand for trailers because of war production and the consequent need of all available means of transportation and the further undisputed evidence that the trailer in question could have been used in defendant's business for 397 days (from October 16, 1942 to January 31, 1944) if he had

been able to secure a certificate of title and license for it, has been fully set forth and discussed in our original opinion and we deem it unnecessary to indulge in further discussion of such evidence here.

We hold that the evidence shows with reasonable certainty that defendant was wrongfully deprived of the use of his trailer for 397 days and that he should be compensated for such loss at the rate of $4.83 a day.

Plaintiff's final point is that "the Court has by its judgment denied to plaintiff the benefit of affirmative rights granted it under the rules of law respecting mitigation of damages." We stated in our original opinion that we were not unmindful "of the rule that a party being damaged cannot stand by and suffer the injury to continue and increase, without reasonable effort to prevent further loss." Although plaintiff insisted in the trial court and in his brief filed in this court that the reasonable use or rental value of defendant's trailer during the time that he was wrongfully deprived of the use thereof was not the proper measure of damages to be applied to the facts in this case, it is now compelled to concede that it is. Plaintiff has also heretofore contended that the damages sought to be recovered by defendant were speculative and remote, not in the contemplation of the parties and could not be determined with any degree of certainty. It now admits in its petition for rehearing that if defendant had rented another trailer and put it "to the use to which he would have put the trailer in question" the rent of such trailer "could be recovered as damages." Since defendant would have earned $4.83 a day by the use of the trailer if he had not been deprived of the use thereof and he would have had to pay the same amount for the rent of another trailer, which rent plaintiff concedes "could be recovered as damages," he was under no obligation to rent a trailer since, to do so, would not have lessened his damages. It is immaterial under the facts of this case whether or not

defendant rented another trailer, because the damages recoverable for loss of use of his own trailer or for the expense of renting another trailer would have been identical in amount.

It is also asserted that when it became evident to defendant that plaintiff would not furnish him a bill of sale it was his duty, if he elected not to rent another trailer, to purchase one for use in place of the trailer in question and that "the amount of damages would be reduced to interest on the amount of money paid by defendant for another trailer." No such contention as this was made by plaintiff in the trial court or in its brief. It appeared that defendant did purchase another trailer and plaintiff's claim as to the effect of such purchase on defendant's damages was treated in our original opinion as follows:

"At some unstated time during the period involved herein defendant purchased another trailer which he used in his business and later sold at a profit. Plaintiff contends that defendant is not entitled to damages for loss of the use of the trailer in question during the period the newly purchased trailer was used in its place and stead. There is not the slightest merit in this contention. The mere fact that defendant made an advantageous purchase of another trailer instead of renting one to use in his business in place of the Fruehauf trailer cannot inure to plaintiff's benefit. The fact still remains that defendant lost the use of his trailer during said period, when it could have been used or rented if he had a license for it."

Plaintiff cites no authority for its instant contention that it was defendant's duty to purchase another trailer to replace the one involved herein and that defendant's "damages under such circumstances are limited to interest on the purchase price of the trailer for the period of his ownership thereof." No such rule could possibly apply to the facts of this case. Defendant lost the use of his trailer by reason of plain-

tiff's wrongful conduct and that loss was not in anywise alleviated by his purchase of the other trailer. Neither were defendant's damages emanating from such loss reduced in the slightest degree by said purchase. Plaintiff had sole control of the situation and we cannot conceive how defendant, even exercising the highest degree of care, could have prevented, lessened, minimized or avoided any of the damages suffered by him.

█ Plaintiff seemingly does not appreciate or want to appreciate that by its wrongful conduct it compelled defendant's trailer to remain idle and useless from September 24, 1942 to February 4, 1944, with the exception of 75 days when he operated it illegally in this state without a license and that during such period of enforced idleness he suffered a complete loss of the money his trailer would have otherwise earned. It is inconceivable how this loss could have been reduced even if defendant had rented or purchased another trailer to use in its place and stead during all of the time it was forced to remain idle.

The law respecting mitigation of damages is fully and clearly stated in *Cedar Rapids & I. C. Ry. & Light Co. v. Sprague Elec. Co.,* 280 Ill. 386. There the court said at p. 391:

"Sutherland, in his work on Damages, says (sec. 88): 'The law imposes upon a party injured from another's breach of contract or tort the active duty of making reasonable exertions to render the injury as light as possible. If by his negligence or willfulness he allows the damages to be unnecessarily enhanced, the increased loss,—that which was avoidable by the performance of his duty,—falls upon him. This is a practical duty under a great variety of circumstances, and as the damages which are suffered by a failure to perform it are not recoverable, it is a duty of great importance. Where it exists, the labor or expense which its performance involves is chargeable

to the party liable for the injury thus mitigated. In other words, the reasonable cost of the measures which the injured party is bound to take to lessen the damages, whether adopted or not, will measure the compensation the party injured can recover for the injury, or the part of the injury that such measures have or would have prevented.' This text is sustained by a large number of decisions cited in the notes. Many other decisions are cited in 15 R. C. L. 442, where it is announced as a fundamental rule that a person who is exposed to injury by another's wrong or negligence, whether tortious or through the breach of a contract, must use reasonable care and diligence to avoid loss or minimize the damages, and that so far as the damages result from his failure to use such care and diligence he cannot recover. The person seeking to recover damages caused by a defective construction of property is required to use reasonable efforts to protect himself. from loss, and can only recover such damages as he could not have avoided by the exercise of reasonable diligence.''

 The law as stated in the *Sprague* case applies only where the injured party could have avoided loss or minimized the damages by the use of reasonable care and he failed to use such care. Under such circumstances he is precluded from recovering damages for as much of his loss as he could reasonably have avoided. As already stated, that rule can have no application here since defendant was helpless under the peculiar facts of this case and could not possibly have avoided any of the loss for which he claims damages. He could not even sell the trailer, because plaintiff's wrongful refusal to give him a bill of sale prevented him from procuring a certificate of title, without which he could not legally sell it. We fail to perceive how under any theory the fact that defendant purchased another trailer could relieve plaintiff from its liability to respond in damages to him for wrongfully depriving him of the use of the trailer in question.

■ We hold that defendant is entitled to recover damages for the loss of the use of his trailer for 397 days, which loss, at the rate of $4.83 a day, amounts to $1,917.51. Said 397 days does not include the 75 days' illegal use of the trailer by defendant without an Illinois license. Deducting $211, the amount of damages properly allowed plaintiff on its statement of claim, from the $1,917.51, which defendant is entitled to recover on his amended counterclaim, leaves a balance of $1,706.51, for which amount judgment should be rendered against plaintiff and in favor of defendant.

The judgments of the municipal court of Chicago are reversed and judgment is entered here for $1,706.51 against plaintiff and in favor of defendant on the latter's amended counterclaim.

*Judgments reversed and judgment here.*

FRIEND and SCANLAN, JJ., concur.