1999 SD 134

**Larry WASLAND, Plaintiff and Appellee,**

v.

**PORTER AUTO & MARINE, INC., Porter Auto & Marine, Inc. D/B/A Porter Auto Body and James W. Porter, Individually, Defendants and Appellants.**

No. 20804.

Supreme Court of South Dakota.

Considered on Briefs June 1, 1999.

Decided Oct. 13, 1999.

John C. Wiles of Wiles & Rylance, Watertown, South Dakota, for plaintiff and appellee.

Leon J. Vander Linden of Delaney, Vander Linden & Delaney, Webster, South Dakota, for defendants and appellants.

KONENKAMP, Justice.

[¶ 1.] In this appeal, we must decide whether an owner bore part responsibility for weather damage to his boat while it awaited repairs at the shop. The owner had access to his boat while knowing it was exposed to the elements, but chose to do nothing, believing any damage would be the shop owner's responsibility. The trial court awarded the boat owner full damages. We reverse and remand for a reduction in the award for the owner's failure to mitigate damages. In other respects, the judgment is affirmed.

**Facts**

[¶ 2.] Larry Wasland's boat was damaged when a building where it was stored collapsed from heavy snow. On April 22, 1997, he took the boat to Porter Auto & Marine to replace the windshield, the tarpaulin cover, a vent, and a cleat. Porter agreed to order a new tarp and to make the necessary repairs at an estimated price of $2,364.33. Wasland left the boat with the torn tarp in place. He said later that he left the ripped tarp on the boat knowing that it would not fully protect it, but he hoped for some protection.

[¶ 3.] In May and June 1997, Wasland periodically contacted Porter to learn the progress of repairs. He even stopped by on occasion. His boat was stored outside without a covering. Having been meticulous about its upkeep, Wasland was concerned. But he neither covered the boat himself nor complained about it to Porter. In early July 1997, he told one of Porter's employees that he wished to use his boat that summer, and if the repairs were not completed soon, he would have another company finish the work.

[¶ 4.] Because of the age of the boat (1985 Larson), Porter had difficulty locating a suitable replacement windshield. He ordered one, but it did not fit. The manufacturer no longer had one available. Through Wasland's insurance adjuster, Porter eventually found what he thought was an adequate replacement. It did not fit precisely. Without first speaking to Wasland, Porter installed it anyway.

[¶ 5.] As originally configured, the windshield rested in front of a padded dashboard. Porter drilled new holes to fasten the replacement on top of the dash. Since it was not an exact fit, the windshield was siliconed in place. Porter also installed the wrong vent. Making matters worse, weather damage left the boat in a more

degraded condition than before it came to the shop. It sat outside without a tarp the entire time it awaited repairs. Mold developed. The seats and carpet became sun-bleached and the decking was water-damaged. When Wasland came to pick up the boat in mid-July 1997, the ripped tarp was rolled up and stowed behind a seat. No replacement tarp was in place.

[¶ 6.] Wasland rejected the repairs. Claiming a mechanic's lien, Porter declined to release the boat. Wasland offered to take possession after letting Porter remove the windshield and other improvements. Porter refused. Wasland brought a claim and delivery action. On December 17, 1997, the trial court ordered Porter to return the boat to Wasland for the limited purpose of obtaining damage appraisals and repair estimates. After these were obtained, Wasland asked that he be allowed to take the boat for repairs. On June 22, 1998, the court set the case for trial and gave Wasland possession of the boat. Through a Larson vendor, Wasland bought the right sized windshield.

[¶ 7.] At trial in August 1998 Wasland claimed: $1,000 per year for loss of use; $1,500 in damages (including $1,200 for devaluation and $300 for cleaning); $988.93 for replacement parts; and, $502.44 for the cost of repairs completed at another shop. In its ruling, the circuit court nullified Porter's repair bill and ordered him to pay Wasland a total of $2,500, which represented $1,000 for loss of use ($500 per year for two years), and $1,500 in damages. The latter number was derived from Wasland's expert witness, whose $1,500 damage estimate proved both unusual and accommodating. It had been obligingly amended twice at Wasland's behest. Two lower figures on the invoice were conspicuously crossed out. Porter now appeals contending that the court's decision was clearly erroneous.

## Standard of Review

[¶ 8.] A trial court's findings of fact shall not be set aside unless clearly erroneous. *State v. Lownes*, 499 N.W.2d

896, 898 (S.D.1993)(citing *State v. Smith*, 477 N.W.2d 27, 31 (S.D.1991); *State v. Pfaff*, 456 N.W.2d 558, 560 (S.D.1990)). Clear error exists only when a review of the evidence leaves us with " 'definite and firm conviction that a mistake has been committed.' " *In re Estate of Jetter*, 1999 SD 33, ¶ 11, 590 N.W.2d 254, 257 (quoting *Estate of Long*, 1998 SD 15, ¶ 9, 575 N.W.2d 254, 256 (other citations omitted)). We review questions of law de novo. *Id.* ¶ 12.

## Analysis and Decision

[¶ 9.] Although he does not contend that the award of $500 for loss of use in the 1997 summer season ·was erroneous, Porter argues that the trial court erred in allowing Wasland $500 loss of use for the 1998 season because Wasland had possession on June 22, 1998. Yet the boat was not immediately available until repairs were completed. Wasland testified that, typically, he used the boat at least three weekends a month from Memorial Day to Labor Day. He found it impossible to rent a comparable inboard motor boat. A pontoon boat rental would have cost $200 per day. Based on the evidence in the record, we cannot say that the trial court's award of $500 for the loss of use of the boat for the summer of 1998 was clearly erroneous.

[¶ 10.] Porter next argues that the trial court erred in allowing Wasland an additional $1,500 because Wasland failed to mitigate damages. Failure to mitigate, an affirmative defense, was not alleged in Porter's answer. SDCL 15–6–8(c); *Kowing v. Williams*, 75 S.D. 454, 67 N.W.2d 780, 783 (S.D.1954). The issue was apparently tried ·by consent. *See Oesterling v. Oesterling*, 354 N.W.2d 735, 737 (S.D. 1984). At trial, Wasland did not object to cross-examination on his failure to mitigate damage to his boat.

[¶ 11.] A bailment results from the delivery of personal property to another for a specific purpose, such as repairs. *See Rensch v. Riddle's Diamonds of Rapid*

*City,* 393 N.W.2d 269, 272 (S.D.1986) (citations omitted); *Johnson v. Hanna,* 78 S.D. 324, 101 N.W.2d 830, 835 (S.D.1960); *Feay v. Miller,* 72 S.D. 185, 31 N.W.2d 328, 330 (S.D.1948). Ordinarily, bailments impose responsibility for damage on bailees if the damage arose from their negligence. *Southard v. Hansen,* 376 N.W.2d 56, 58 (S.D.1985) (citations omitted). *See also Knight v. H & H Chevrolet,* 215 Neb. 166, 337 N.W.2d 742, 745–46 (1983). "A depository for hire must use at least ordinary care for the preservation of the thing deposited." SDCL 43–39–10. Liability for bailees, however, is not absolute unless they have exclusive control over the property bailed, and their negligence proximately caused the damage. *Knight,* 337 N.W.2d at 746; *Goudy & Stevens, Inc. v. Cable Marine, Inc.,* 924 F.2d 16, 18 (1stCir.1991).

[¶ 12.] If the bailed property is accessible to them, bailors have a duty to reasonably avert or diminish damage. 8 AmJur2d *Bailments* § 213 (1980)(citing *Eastman v. Sanborn,* 85 Mass. 594, 3 Allen 594 (1862)); *see also* 8 CJS *Bailments* § 59 (1988) (bailor able to protect property from damage may not watch it be ruined and then expect remedy against bailee)(citing *Smith v. Frost,* 51 Ga. 336 (Ga 1874)). Those experiencing damage cannot allow injury to continue and increase without expending reasonable effort to avoid further loss. *See generally Davis v. Knippling,* 1998 SD 31, ¶ 13, 576 N.W.2d 525 (discussing duty to mitigate arising after negligent act by tortfeasor); *Jensen v. Chicago & Western Indiana Ry. Co.,* 94 Ill.App.3d 915, 50 Ill.Dec. 470, 419 N.E.2d 578, 591 (1981) (one must make reasonable efforts to prevent greater loss and not stand idly by) (citing *Fruehauf Trailer Co. v. Lydick,* 325 Ill.App. 28, 59 N.E.2d 551, 555–56 (1944)); *O'Brien v. Isaacs,* 17 Wis.2d 261, 116 N.W.2d 246, 249 (1962)("That a plaintiff must do all that is reasonable to minimize damages after a tort or breach of contract has occurred is well established.") (citations omitted).

[¶ 13.] Wasland testified that he had access to his boat while it was stored at Porter's. He knew it was kept outside, uncovered, and understood the possibility that damage could occur. He thought, nonetheless, that Porter bore all responsibility for protecting the boat. Although Porter's negligent care is not excusable, Wasland also had a duty to minimize damage to his boat. Because he did not act to protect it from the elements, or express his dissatisfaction with the manner in which it was being stored, Wasland failed to use reasonable diligence to minimize damages. Nonetheless, the trial court awarded Wasland the full amount of damages based on his expert's $1,500 estimate. The court was clearly erroneous in its finding that Porter alone was responsible for the boat's devaluation. We remand for the court to decide what amount should be deducted from Wasland's award for his failure to minimize damage through the exercise of reasonable diligence.

[¶ 14.] Affirmed in part, reversed in part, and remanded.

[¶ 15.] MILLER, Chief Justice and SABERS and GILBERTSON, Justices, concur.

[¶ 16.] AMUNDSON, Justice, dissents.

AMUNDSON, Justice (dissenting).

[¶ 17.] It has been the long-standing policy of this Court that "[i]n determining the amount of recovery, there must be a reasonable basis for measuring the loss; damages need only be measured with reasonable certainty." *Wang v. Bekken,* 310 N.W.2d 166, 167 (S.D.1981) (citing *Schmidt v. Forell,* 306 N.W.2d 876 (S.D.1981); *Schmidt v. Wildcat Cave, Inc.,* 261 N.W.2d 114 (S.D.1977); *Drier v. Perfection, Inc.,* 259 N.W.2d 496 (S.D.1977)).

[¶ 18.] In this case, plaintiff submitted an inflated damages claim as reflected by the attached exhibit from Doug's Anchor Marine. Wasland testified during cross-examination at trial that the following conversation took place between him and Doug Root of Doug's Marine and himself:

Q. (Mr. Vander Linden) All right, now I notice on here that there's some marks that have been scratched off. Why is that?

A. (Larry Wasland) Because they put two estimates on it and I felt, "Do you think that's high enough damage wise?" And they said, "Well, what do you feel?" And I said, "Well, that's what I feel." So that's the figure that they put there too. So they agreed that probably was more accurate.

Damages are to be proved to a degree of reasonable certainty. This submission by Wasland of fabricated damages does not comport to this requirement and allows a party to submit a falsified damages claim. How can you have an expert appraisal on damages that is not based on the expert's own judgment, but on whatever the owner wants. Although we have said before that damages need not be proved "to a degree of mathematical precision," nor should mathematics be allowed to manipulate a claim for damages. *Husky Spray Serv., Inc. v. Patzer*, 471 N.W.2d 146, 153 (S.D. 1991). Should a court accept this appraisal as proof of damages? I think not. Therefore, I would reverse on Issue 3.

REPAIR ORDER

AUBURN MARINE INC.

(605) 886-2828
Watertown, SD 57201

FILED
AUG 28 1998
ROGER SANNES
Day County Clerk of Courts

EXHIBIT
2

EXHIBIT
FILED
APR 20 1999

NAME Larry Wasland

ADDRESS

CITY, STATE, ZIP

YEAR | BOAT Larson 175 | COLOR Blu | SERIAL # LAR024313805
| MOTOR Chrysler | HP | SERIAL #

DATE 1-26-98
HOME # 758-2263
WORK #
WORK PERFORMED BY:
BOAT LIC.
TRAILER LIC.

OPER. NO.

INSTRUCTIONS:

Windshield in improper fit
Call the Eund Right Window
Eizanst Whle of Boat #4950
Entire to total clean up
Loss of value due to improper fit
of windshield - New windshield - N.A.

Clean Boat

STATUS

SUMMARY
TOTAL LABOR
TOTAL PARTS
ENVIRONMENTAL & MISC.
SUBLET REPAIRS
SUBTOTAL
TAX
TOTAL AMOUNT

LABOR CHARGE
300.00

20804

QUAN. | PART NO./DESCRIPTION | PRICE

Broken windshield & Repairs
with light and
top parts                500

BROUGHT FORWARD
TOTAL PARTS

AFTER 30 DAYS A
SERVICE CHARGE OF
2% WILL BE ADDED TO
YOUR MONTHLY BILL.

I hereby authorize the above repair work to be done along
with the necessary material, and hereby grant you and/or
your employees permission to operate the vehicle herein
described on streets, highways or elsewhere for the pur-
pose of testing and/or inspection. An express mechanic's
lien is hereby acknowledged on above vehicle to secure
the amount of repairs thereto.

X

NOT RESPONSIBLE FOR LOSS OR DAMAGE TO VEHICLES
OR ARTICLES LEFT IN VEHICLES IN CASE OF FIRE, THEFT,
OR ANY OTHER CAUSE BEYOND OUR CONTROL.