## MOEN v. MOEN.

Comp. Laws, § 4763, enacts that the provisions of the Code are to be liberally construed with a view to effect its objects and promote justice. Section 2733 provides that real property within the territory is governed by its laws. Section 3403 makes every illegitimate child an heir of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child. Prior to the taking effect of section 3403, in 1877, a nonresident alien acknowledged in writing, in the presence of competent witnesses, that he was the father of an illegitimate child. Held, that on his death after section 3403 took effect the child was his heir as to his realty in South Dakota.

(Opinion filed Oct. 7, 1902.)

Appeal from circuit court, Lincoln county. Hon. JOSEPH W. JONES, Judge.

Action by Johanna Bertina Johnsdatter Moen against John J. Moen. From a judgment for defendant, plaintiff appeals. Reversed.

The facts are stated in the opinion.

*P. J. Rodge* and *Frank R. Aikens,* for appellant.

The laws of the state where real estate is situated exclusively govern its alienation, inheritance and succession Courts of last resort have universally adhered to this principle wherever and whenever it has been brought in question. Washburn on Real Property, Vol. 3, 5th Ed., p. 17 and cases cited; Tied. on Real Property, Sec. 664.; Story Conflict of Laws, Secs. 383-384, 430-448; Smith v. Derr, 75 Am. Dec., 641; Caldwell v. Miller, 23 Pac. Rep., 946; Miller v. Miller, 91 N. Y., 315; Harvey v. Ball, *et al,* 32 Ind., 98; Williams v. Kimball, 26 L. R. A., 746; Loring v. Thorndike, 5 Allen, 357; Estate of

Magee, 63 Cal., 414; Blythe v. Ayers, 19 L. R. A., 40; Keegan v. Geraghty, 101 Ill., 29; Van Horn v. Van Horn, 77 N. W. Rep., 847; Walling v. Christian & Croft Grocery Co., 47 L. R. A., 608; In re Waesches Estate, 166 Pa. St,, 204, Comp, Laws Secs. 2733, 3400, 3401.

An illegitimate child is the heir of the person who in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child. Comp. Laws Sec. 3403.

Statutes enacted for the benefit of illegitimates should always be liberally construed in favor of the illegitimate—the only strict requirement being proof of paternity. Blythe v. Ayers, 19 L. R. A., 40; Brown v. Legion of Honor, 78 N. W. Rep., 73.

O. S. Gifford, E. C. Ericson, and C. E. Benedict, for respondent.

The law of the jurisdiction of the domicile of the father at the time the alleged acts of recognition took place, must determine the validity and force of such acts of recognition. Benton v. German American Bank, 64 N. W. 227; Van Vorhees v. Britnall, 86 N. Y. 19; Ross v. Ross, 37 Am. 321.

The legislature in passing Sec 3403 Comp. Laws, intended that it should be a rule for future action, the same as all other statutes, unless a contrary intention is clearly expressed. American Investment Co. v. Thayer, 7 S. D. 73; 63 N. W. 233; Dwarris on Statutes, 162—163; Hartinger v. Ferring 24 Fed. Rep. 15; Stevenson's Heirs v. Sullivant, 5 Wharton, 207; Brown v. Belmarde, 3 Kan. 35; Morgan v. Perry, 51 N. H. 559; U. S. Trust Co. v. Maxwell, 57 N. Y. Supp. 53; The People v, Supervisors of Columbia Co. 44 N. Y. 130.

HANEY, P. J. In this action the learned circuit court found the facts to be as follows: "(1) That the plaintiff herein is the illegitimate child of John Johannessen Moen, otherwise known as John K. Moen, deceased, described in the plaintiff's complaint. That she was born in Norway, Europe, on or about the 24th day of September, 1874, where she resided until the year 1893, when she came to South Dakota, and has since lived in said state. That Britta Iverson was the mother of plaintiff, and that she was also born and at all times lived in said Norway, Europe, where she now lives. (2) That the said John Johannessen Moen, otherwise known as John K. Moen, was born and lived in said Norway, Europe, until the latter part of 1874, or the early part of 1875, when he came to the United States, and settled in the territory of Dakota. That the said John Johannessen Moen, otherwise known as John K. Moen, did, before leaving said Norway, but while a resident and citizen of said country, and after the birth of plaintiff, to wit, in the latter part of the year 1874, acknowledge himself to be the father of the plaintiff, in writing, signed and executed by him, the said John Johannessen Moen, and in the presence of a competent witness. (3) That the said John Johannessen Moen, otherwise known as John K. Moen, came to the territory of Dakota in 1875, settled and made a homestead filing or entry upon the land described in plaintiff's complaint, as follows, to wit, the northeast quarter of section 30, in township 96 north, of range 49 west of the fifth principal meridian, Lincoln county, South Dakota; and the said John Johannessen Moen died in Lincoln county, Dakota territory, in the month of May, 1877, without completing or making final proof thereon. That the said John Johannessen Moen

settled and filed upon said land under and by the name of John K. Moen, and that he never married. That he was at the time of his death, a resident of Lincoln county, Dakota territory, and had been a resident thereof continuously since 1875 (4) That the defendant herein, John J. Moen, is a brother of the said John K. Moen, described in plaintiff's complaint. That the said defendant completed and complied with the requirements of the government regarding the improvement of said premises described herein, and made final proof upon the same, and presented said final proof to the government of the United States, whereupon the government did, on or about the 15th day of February, 1885, issue a grant or patent for said land to the heirs of said John Johannessen Moen, otherwise known as John K. Moen. That this defendant has been in possession of said premises since on or about the year 1885. That Johannes Knudsen Moen is the father of said John K. Moen and this defendant, and was living at the time of the issue of said patent to said premises by the government, and that he did, on or about the 21st day of March, 1887, convey said premises described in the complaint herein to the said defendant herein by quitclaim deed executed by him, the execution of which deed was acknowledged before the United States consul at Bergen, in said Norway, who duly certified to said acknowledgment over his official hand and seal. (5) That there was no law in Norway, Europe, at the time of the birth of plaintiff, nor has there been since, either written or unwritten, by which the plaintiff herein could inherit, under or by virtue of the instrument executed by said John Johannessen Moen, otherwise known as John K. Moen, and described in plaintiff's complaint and in the second finding of fact herein. (6) That John Johan-

nessen Moen, otherwise known as John K. Moen, did not at any time publicly acknowledge the plaintiff as his child, nor did he treat her as if she were legitimate, nor did he adopt her in any manner as his child." The plaintiff contends that upon the facts so found the court below should have concluded that she was the absolute owner and entitled to the possession of the premises described in the complaint, instead of deciding that defendant was the owner and entitled to the possession. The land in controversy was conveyed by the United States to "the heirs of John K. Moen." It was located in the then terri-tory of Dakota, now state of South Dakota. Who are intended as grantees in such a conveyance depends upon the law of the state or territory wherein the land is situated. Investment Co. v. Caldwell, 152 U. S. 65, 14 Sup. Ct. 504, 38 L. Ed. 356. It is an established principle, everywhere recognized, arising from the necessity of the case, that the disposition of immovable property whether by deed, descent, or any other mode, is exclusively subject to the government within whose jurisdiction the property is situated. U. S. v. Fox, 94 U. S. 315, 24 L. Ed. 192; Comp. Laws, § 2733. Our Civil Code contains the following rules relating to succession or "the coming in of another to take the property of one who dies without disposing of it by will": "If the decedent leaves no surviving husband or wife, but leaves issue, the whole estate goes to such issue." "Every illegitimate child is an heir of the person, who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child." Comp. Laws, §§ 3399, 3401, 3403. The Civil Code now in force in this state had its origin in the report of a New York commission, which first took the form of a statute in an act passed, at the fifth session of the

legislative assembly of Dakota territory, approved January 12, 1866. The same report, revised and amended, was enacted as the Civil Code of California in 1873. In 1875 a commission was created to revise and codify the laws of Dakota territory. This commission revised the Civil Code then in force, incorporating therein many of the amendments made by the legislature of California. Its labors resulted in the Revised Codes of 1877, which took effect February 17, 1877. The provisions relating to succession, heretofore quoted, are found in the California Code, but not in the territorial Code previous to the revision of 1877. Thus it would appear that the law relied upon by the plaintiff came from California, and was in force in the jurisdiction wherein the land in controversy was situated when her father died, but was not in force therein when he, in writing, in the presence of a competent witness, acknowledged himself to be her father. Though the facts relating to such acknowledgment, as found by the court below, comply literally with the language of the statute, defendant contends that the plaintiff did not succeed to her father's estate, because: (1) Such acknowledgment was executed before the statute took effect; and (2) because it was executed in Norway, where there was and is no law by which she could inherit under such an instrument. The statute does not, by its express terms, support respondent's contention. It relates to the subject of succession; it is broad and comprehensive, and should be "liberally construed with a view to effect its objects and to promote justice." Comp. Laws, § 4763. Undoubtedly, the principal object of the legislature was to enable an illegitimate child to inherit its father's estate, and incidentally to prescribe the character of evidence required to establish its paternity./ Recurring to the language of the

statute, when is a child an heir? Manifestly, upon the death of its ancestor. An heir, as the term is here used, is always appointed by the law. Its title is called into existence by the death of its ancestor, and its rights are governed by the law in force at the time of such death. 2 Washb. Real Prop. pp. 6-17. No one can take real property except those who are recognized as heirs by the law of the country where the property is situated. Story, Confl. Laws, § 483. No one has any vested rights in his ancestor's property until the latter's death. He may not survive the ancestor. The ancestor may dispose of the property by will, or the law of succession may be changed before his title becomes vested. The acknowledgment required by the statute cannot be executed after the ancestor's death. Hence the thought of the lawmaker would have been more accurately expressed in these words: "Every illegitimate child shall inherit of the person who, at the time of his death, shall have acknowledged himself to be the father of such child, in writing, signed in the presence of a competent witness." The inquiry demanded by the statute to be answered at the time of the property owner's death is simply this: Has the paternity of the person claiming to be an heir been acknowledged by the deceased, in writing, signed in the presence of a competent witness? The time and place of such acknowledgment are not prescribed by the statute. It may have been made at any place and at any time after the birth of the claimant and before the death of the ancestor. The effect of the acknowledgment is to clothe the child with the same rights as to real property as are possessed by one born in lawful wedlock. This is clearly what the legislature intended, and it was within the legislative power to make such rules regarding suc-

cession to real property within its jurisdiction as it deemed expedient. There is, therefore, no merit in the contention that the acknowledgment in this case is ineffectual because it was executed before the statute took effect. A different conclusion was reached by the United States circuit court in Iowa. Hartinger v. Ferring (C. C.) 24 Fed. 15. We prefer, however, to follow the opinion of the supreme court of that state on this subject. In a recent case involving the right of an illegitimate child to inherit property in Iowa that court, speaking by Justice McCLAIN, uses this language: "Appellees insist that evidence of recognition must be strictly limited to acts and conversations subsequent to the time when such recognition would by law entitle the plaintiff, if an illegitimate son, to inherit. For this contention they cite the case of Hartinger v. Ferring (C. C.) 24 Fed. 15, in which the circuit court of the United States for the Northern district of Iowa reached the conclusion contended for; but we think this position is untenable. The legislature, having the right to determine the rules of inheritance in accordance with which the property of persons subsequently dying shall be distributed, may provide as it sees fit with reference to who shall be heirs. There is no vested right to inherit until the death of the ancestor. It may, therefore, be provided that illegitimate children already born and recognized shall be considered heirs. The recognition contemplated by the statute is not recognition as prospective heir, but recognition as an illegitimate child; and whoever fulfills the conditions of the statute as to the right to inherit existing at the time of the death of the ancestor is entitled to inherit under the statute. There is nothing in the language indicating that it was to be applicable to such recognition as should afterwards be made.

It describes a class of persons, and declares that persons of that description shall inherit. It does not refer to or create a status. It is prospective in its operation as to the right, but there is nothing to suggest that persons of the class described —that is, illegitimates already recognized—shall not inherit under it. It would be just as reasonable to limit the provisions of the statute to illegitimates afterwards begotten and born as to so limit it to illegitimates afterwards recognized, and it would be just as reasonable in the one case as in the other to argue that to adopt a construction making it applicable to existing illegitimate children would be to give the statute a retrospective effect." Alston v. Alston (Iowa) 86 N. W. 55. If the acts constituting the acknowledgment are in themselves such as the statute prescribes, they confer the right to inherit in the state where the real property is situated, without reference to the intent with which they were performed. In re Rohrer's Estate (Wash.) 60 Pac. 122, 50 L. R. A. 350; Blythe v. Ayres (Cal.) 31 Pac. 915, 19 L. R. A. 40; Brock v. State, 85 Ind. 397; Crane v. Crane, 31 Iowa, 296. It is, therefore, wholly immaterial what law existed in Norway relating to the recognition of illegitimate children when the writing in this case was signed by the plaintiff's father. It may be conceded that he neither knew nor intended that its execution would confer upon the child the right to inherit his property in any jurisdiction. Nevertheless it had the effect of furnishing the proof required by the laws of this jurisdiction to establish the fact that he was the father of the child, and such fact being thus established makes her an heir of her deceased father, and entitled to the land in controversy. We do not apprehend that the decision in Eddie v. Eddie (N. D.) 79 N. W. 856, 73 Am. St. Rep. 765,

conflicts with this conclusion. In that case the father never acknowledged the children to be his own by any written instrument. The court was dealing with the statute of North Dakota relating to the adoption of children, and may have been right in concluding that the status of the persons claiming to have been adopted by acts performed in Norway could not be determined by the law of North Dakota. Here we are dealing simply with a rule of succession as it was in force and affected title to real property in Dakota territory at the time of the owner's death. If, however, our views do conflict with the decision in North Dakota, we cannot, with all due respect to the able court of that state, arrive at any other conclusions than those announced herein. Upon the facts as found by the learned circuit court, we think the plaintiff should have been adjudged to be the owner in fee and entitled to the possession of the premises in controversy.

Not having appealed, the defendant is in no position to question the correctness of the findings of fact. The judgment of the circuit court is reversed, and the case remanded, with directions to enter a judgment decreeing the plaintiff to be the owner in fee of the premises described in the complaint, and entitled to the possession thereof, and for her costs and disbursements.