1997 SD 81

In the Matter of the GUARDIANSHIP AND CONSERVATORSHIP OF Ursula LANNING, a Person In Need of Protection.

No. 19895.

Supreme Court of South Dakota.

Considered on Briefs June 4, 1997.

Decided July 9, 1997.

Paul S. Swedlund and Patrick G. Goetzinger of Gunderson, Palmer, Goodsell & Nelson, Rapid City, for Appellant Cathey Children.

Randall L. Macy of Buckmaster and Macy Belle Fourche, for Appellee Pioneer Bank & Trust, Conservator for Ursula Lanning.

GILBERTSON, Justice.

[¶ 1.] The Cathey children appeal from an order denying the petition of their mother, Ursula Lanning, to make a new will and to amend her existing trust, and finding lack of testamentary capacity and undue influence. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] Ursula Lanning had 12 children from two marriages. Ten children were born of her first marriage to John Cathey, but one child predeceased her. She has two children from her current marriage to Edward Lanning. Mrs. Lanning did not raise the youngest Cathey children. The older Cathey children petitioned for custody and raised the youngest children themselves.

[¶ 3.] In January, 1996, at the time of the hearing for guardianship and conservatorship, Mrs. Lanning was 87 years old. She lived with her husband in a mobile home one mile outside Belle Fourche. Neither of the Lannings was in good health; Mrs. Lanning was recovering from colon cancer surgery, and Mr. Lanning was suffering from congestive heart failure. A housekeeper was paid to come in 40 hours a week to see to the daily needs of the couple. The Lannings' daughter, Sherry, lived nearby.

[¶ 4.] Mrs. Lanning and her first husband raised sheep on their ranch in Montana. Upon his death, each of the Cathey children inherited a share of the ranch from their father's estate. Mrs. Lanning eventually

gifted the widow's share she received to the children of her second marriage.

[¶ 5.] Edward Lanning owned a ranch in Montana where the couple lived until ill health forced them to move to South Dakota to be near their daughter. The Lannings received royalties for oil on the property in Montana, and at the time of the hearing in this matter, the value of their combined assets was in the neighborhood of $2 million.

[¶ 6.] In 1984, Mrs. Lanning had executed a will leaving the bulk of her estate to the Lanning children. In 1993, due to the size of their assets and upon the advice of their accountant, the Lannings began estate tax planning. Edward Lanning gifted property to his wife in an attempt to equalize their estates for federal estate tax purposes. The property was placed into trust.[1] Testimony at hearing indicated that the Lannings were aware that Edward Lanning could have placed restrictions on Mrs. Lanning's right to convey the property to the children of her first marriage, but no such restrictions were imposed. Nonetheless, Mrs. Lanning's 1984 will and the 1994 trust contained identical dispositive provisions: upon Mrs. Lanning's death, each Cathey child would receive $1,000, and the rest of the estate would be divided equally between the two Lanning children.

[¶ 7.] In November 1995, Danny Lanning petitioned for temporary guardianship of his mother.[2] Pioneer Bank & Trust, which had been the Lannings' bank for some 40 years, was named as temporary conservator of Mrs. Lanning's estate. In January 1996, during the pendency of the proceedings for appointment of a permanent guardian and conservator, Mrs. Lanning executed a new will which was a 180–degree reversal of her former will. The new will gave each of the Lanning children $1,000, and gave the remainder of her $1 million estate in equal shares to the Cathey children.

[¶ 8.] Following its appointment as permanent conservator, Pioneer Bank moved to revoke the January 1996 will.[3] In April 1996, Mrs. Lanning had a third attorney prepare a new will and petition the court to allow her to amend the provisions of her trust to conform to the testamentary disposition in the new will.[4] Under this proposal, all of Mrs. Lanning's children would get an equal share of the estate. Following a hearing, the trial court determined that the January 1996 will was invalid and the petition to execute a new will and amend the trust should be denied because Mrs. Lanning lacked testamentary capacity and had been subjected to undue influence. The Cathey children appeal, raising the following issues:

1. Whether the trial court erred in finding that Mrs. Lanning lacked the testamentary capacity to make the proposed April 1996 will and amendments to the trust?

2. Whether the trial court erred in finding that Mrs. Lanning was subject to continuing undue influence invalidating the proposed April 1996 will and amendments to the trust?

### STANDARD OF REVIEW

[¶ 9.] We review a trial court's findings of lack of testamentary capacity and undue influence under the clearly erroneous standard of review, and we give due regard to the trial court's opportunity to judge the credibility of witnesses. *In re Estate of El-*

---

1. A revocable living trust was executed in June 1993 but was lost. A duplicate was executed in January 1994.

2. Lanning testified that his father was still mentally alert, although frail physically.

3. Eventually, all parties sought to have this will revoked, although for different reasons.

4. The third attorney, Thomas Carr, was appointed by the trial court to represent Mrs. Lanning due to a conflict of interest with the attorney who drafted the January 1996 will. At the time of Carr's appointment, the trial court had made permanent the temporary guardianship and conservatorship. The fact that a guardian was appointed does not of itself invalidate a will for lack of testamentary capacity. *In Re Estate of Hastings*, 347 N.W.2d 347, 350 (S.D.1984). However, Carr requested that the trial court determine at hearing what Mrs. Lanning's wishes would be. Carr did not testify as to his opinion of Mrs. Lanning's testamentary competency or susceptibility to undue influence, and at hearing, called only Mrs. Lanning to testify. He did cross-examine the witnesses called by the other parties.

*liott,* 537 N.W.2d 660, 662 (S.D.1995); *In re Estate of Linnell,* 388 N.W.2d 881, 883 (S.D. 1986).

> Under the clearly erroneous standard, the question for this Court is not whether we would have made the same findings that the trial court did, but, whether on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed. That this Court may have found the facts differently had we heard the testimony is no warrant for us to substitute our judgment for the trial court's carefully considered findings.

*Id.* (internal citations and quotations omitted). We review documentary evidence de novo. *Elliott,* 537 N.W.2d at 662.

### LEGAL ANALYSIS AND DECISION

[¶ 10.] **1. Whether the trial court erred in finding that Mrs. Lanning lacked the testamentary capacity to make the proposed April 1996 will and amendments to the trust?**

[¶ 11.] Under our law, anyone over the age of 18 years who is of sound mind may make a will. SDCL 29A-2-501. We have defined "sound mind" for purposes of testamentary capacity as follows:

> One has a sound mind, for the purposes of making a will, if, *without prompting,* he is able 'to comprehend the nature and extent of his property, the persons who are the natural objects of his bounty and the disposition that he desires to make of such property.' *In re Estate of Podgursky,* 271 N.W.2d 52, 55 (S.D.1978). Soundness of mind, for the purpose of executing a will, does not mean 'that degree of intellectual vigor which one has in youth or that is usually enjoyed by one in perfect health.' *Petterson v. Imbsen,* 46 S.D. 540, 546, 194 N.W. 842, 844 (1923). Mere physical weakness is not determinative of the soundness of mind, *In re Estate of Anders,* 88 S.D. 631, 636, 226 N.W.2d 170, 173 (1975); and it is not necessary that a person desiring to make a will 'should have sufficient capacity to make contracts and

do business generally nor to engage in complex and intricate business matters.' *Petterson,* 46 S.D. at 546, 194 N.W. at 844.

*In re Estate of Burk,* 468 N.W.2d 407, 409 (S.D.1991) (quoting *Linnell,* 388 N.W.2d at 883–84) (emphasis added).

■ Testamentary capacity cannot be determined based on a single moment in time, but rather is based on consideration of the condition of the testator's mind a reasonable length of time before and after the making of the will. *In re Estate of Nelson,* 330 N.W.2d 151, 155 (S.D.1983).

■ [¶ 12.] Our review of the record supports the trial court's finding that Mrs. Lanning did not know the natural objects of her bounty. She could not, without prompting, name all 12 of the children born to her. The first time she was asked, by her own attorney at a January 19, 1996 hearing, Mrs. Lanning testified she thought she had six children born of the Cathey marriage. The second time she testified, four months later, she named 11 of her 12 children (seven of whom apparently were in attendance at the hearing). However, the transcripts indicate that following a discussion the morning of trial, one of the Cathey children had provided Mrs. Lanning with a written list of the children, which Mrs. Lanning took to the stand with her.[5]

[¶ 13.] Mrs. Lanning also was unable to understand the nature and extent of her property. When asked about her assets, Mrs. Lanning testified she was "not right on top of this" and did not know "what everything is and where it's at." In addition, the attorney who drafted the trust agreement testified that Mrs. Lanning had a clear understanding of the provisions of the trust when it was executed, and in fact, explained what it did back to him. The attorney testified that, in 1993, Mrs. Lanning was assertive in expressing her estate planning desires, but after watching her testimony at the 1996 hearing, he testified that she appeared to be vague and that he would be "on inqui-

---

**5.** *We note this apparent coaching also lends itself* to support of the conservator's theory of undue influence.

ry" as to her competence if she now came to him to change her estate plan.

[¶ 14.] Mrs. Lanning's testimony regarding her disposition of property was conflicting. She testified she wanted to change her plan to be "fair" to all her children "alike," which is the general effect of the plan in her petition. Nevertheless, when asked if the petition disposed of her property as she wanted, she stated she hadn't made a decision on the disposal of her property yet. When presented with a copy of the 1994 trust agreement, she could not identify it or figure out what it did.

[¶ 15.] Based on the entire evidence, the trial court's finding of testamentary incapacity is not clearly erroneous. As Mrs. Lanning did not have testamentary capacity, we do not reach the undue influence issue. *Nelson,* 330 N.W.2d at 156; *In re Estate of Melcher,* 89 S.D. 253, 259, 232 N.W.2d 442, 445 (1975).

[¶ 16.] We affirm.

[¶ 17.] MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.