1998 SD 28

**Kristine ERDAHL, Charging
Party and Appellee,**

v.

**Dennis A. GROFF, Appellant.**

No. 20027.

Supreme Court of South Dakota.

Argued Dec. 4, 1997.

Decided March 18, 1998.

Rehearing Denied May 6, 1998.

Michael P. Reynolds, Gregory A. Eiesland of Quinn, Eiesland, Day & Barker, Rapid City, for charging party and appellee.

Donald P. Knudsen, James S. Nelson of Gunderson, Palmer, Goodsell & Nelson, Rapid City, for appellant.

STEELE, Circuit Judge.

[¶ 1.] This discretionary appeal is from an order issued by the circuit court reversing a decision of the South Dakota Department of Commerce, Division of Human Rights, and remanding the case to the Division for further proceedings. We affirm.

FACTS AND PROCEDURAL HISTORY

[¶ 2.] Kristine Erdahl (Erdahl) alleges sexual harassment by Dennis Groff (Groff) when she worked as an intern and paralegal in the Pennington County State's Attorney's office from October 1993 to May 20, 1994. During most of this period, she worked primarily with Groff, who was the Pennington County State's Attorney.

[¶ 3.] In July 1994, Erdahl filed a charge of discrimination with the Division of Human Rights, pursuant to SDCL 20–13–10,[1] alleging that Groff engaged in unwelcome sexual conduct which was used as a basis for employment decisions (quid pro quo) and which altered the conditions of her employment (hostile work environment).

[¶ 4.] Division investigated Erdahl's complaint in accordance with SDCL 20–13–28.[2] The investigator reviewed approximately sixteen transcripts of interviews submitted by Groff's attorney and seven unsigned state-

---

1. SDCL 20–13–10 provides:

It is an unfair or discriminatory practice for any person, because of race, color, creed, religion, sex, ancestry, disability or national origin, to fail or refuse to hire, to discharge an employee, or to accord adverse or unequal treatment to any person or employee with respect to application, hiring, training, apprenticeship, tenure, promotion, upgrading, compensation, layoff or any term or condition of employment.

2. SDCL 20–13–28 provides:

The division of human rights may receive, investigate, and pass upon charges alleging unfair or discriminatory practices.

ments, and conducted thirty interviews. There was no adversarial hearing at this stage of the proceedings, and witnesses were not cross-examined. The record was reviewed under the standard set forth in SDCL 20–13–28.1, which, at the time of the investigation, provided:

> If the Division of Human Rights determines there is no probable cause to support the allegations of a charge after an investigation of the charge in accordance with § 20–13–28, the division shall issue an order dismissing the charge. This shall be considered a final agency action for purposes of appeal under chapter 1–26.

◼ [¶ 5.] Division investigator analyzed Erdahl's claim in light of the elements a complainant must show in a sexual harassment case:

1. That the complainant belongs to a protected group;
2. That the complainant was subject to unwelcome sexual harassment;
3. That the harassment was based on sex;
4. That the harassment affects a "term, condition, or privilege" of employment; and
5. That the employer knew or should have known of the harassment in question and failed to take proper remedial action.

*Huck v. McCain Foods,* 479 N.W.2d 167 (S.D.1991); *Hall v. Gus Constr. Co., Inc.,* 842 F.2d 1010 (8thCir.1988); *Meritor Savings Bank FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

[¶ 6.] The investigator concluded there was a sexual relationship between Groff and Erdahl, but that it was voluntary, and that "[a] preponderance of the evidence indicates that Erdahl *welcomed* Groff's behavior towards her and was not offended." (emphasis original).

[¶ 7.] Erdahl also claimed she terminated the sexual relationship some time at the end of April 1994, and that Groff retaliated by taking work away from her, ignoring her, and moving her desk. She argued such conduct constituted conditional sexual

harassment (quid pro quo). The investigator concluded her claims in this regard were "shallow at best." Division adopted the investigator's report and Erdahl's complaint was dismissed. She appealed to the circuit court.

[¶ 8.] The circuit judge held the Division erred as a matter of law in applying a "preponderance of the evidence" standard, reasoning that a probable cause determination under SDCL 20–13–28.1 dictated a lower threshold of proof requirement. The court adopted the definition of "probable cause" in a civil context from Black's Law Dictionary and held the correct standard for a probable cause determination in a civil case is:

> An apparent state of facts found to exist upon reasonable inquiry which would induce a reasonable, intelligent, and prudent person to believe, in civil cases, that a cause of action existed.

Black's Law Dictionary 1365 (4thed. 1968).

[¶ 9.] The case was remanded to the Division for a redetermination. On remand, Division incorporated its original investigative findings and concluded that even under the circuit court's definition of "probable cause," Erdahl failed to establish a claim. It issued its determination of no probable cause on April 6, 1995.

[¶ 10.] Erdahl appealed to the circuit court again, claiming the Division merely paid lip service to the circuit court's direction, and still failed to apply the appropriate standard of proof. During the pendency of the appeals process, the legislature enacted SDCL 20–13–1.1, which defined the term "probable cause:"

> For purposes of findings under this chapter, probable cause is defined as a determination that it is more likely than not that the charging party and members of a class, or both, were discriminated against based on a violation of this chapter. The likelihood that discrimination occurred is assessed based upon evidence that establishes a prima facie case, and if the respondent has provided a viable defense, whether there is evidence of pretext.[3]

---

**3.** This is the same standard as employed by the

U.S. Equal Employment Opportunity Commis-

[¶ 11.] Groff argued on appeal SDCL 20–13–1.1 established a "preponderance of the evidence" standard and the statute should be applied retroactively in this case.

[¶ 12.] The circuit court held the Division still did not apply the appropriate standard; SDCL 20–13–1.1 should not be applied retroactively; and even if it was so applied, there was still evidence in the record to support a finding of probable cause. The circuit court issued its own finding of probable cause, and remanded the case to the Division for further proceedings.[4]

[¶ 13.] Groff then requested an intermediate appeal from the circuit court's determination, which we granted.

### ISSUE

[¶ 14.] **Whether the circuit court erred in determining there is probable cause to support a claim of sexual harassment.**

### STANDARD OF REVIEW

[¶ 15.] The question presented in this case concerns the circuit court's definition and finding of "probable cause." In reviewing the question, we must be mindful the Supreme Court makes the same review of the administrative agency's decision as did the circuit court, unaided by any presumption the circuit court's decision was correct. SDCL 1–26–37; *Piper v. Neighborhood Youth Corps*, 90 S.D. 443, 241 N.W.2d 868 (1976); *In Re Templeton*, 403 N.W.2d 398 (S.D.1987). The Court must give great weight to findings made and inferences drawn by the agency on question of fact. *Kennedy v. Hubbard Milling Co.*, 465 N.W.2d 792 (S.D.1991); *Spitzack v. Berg Corp.*, 532 N.W.2d 72 (S.D.1995). Conclusions of law and mixed questions of law and fact are fully reviewable. *Id.*; *Permann v. Dep't of Labor*, 411 N.W.2d 113 (S.D.1987); *Tieszen v. John Morrell & Co.*, 528 N.W.2d

401 (S.D.1995). Where an ultimate conclusion can be arrived at only by applying a rule of law, the result is a "conclusion of law." *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292 (S.D.1982).

### ANALYSIS

[¶ 16.] The definition of "probable cause" employed by the court is a question of law and as such is fully reviewable with no presumption attaching to the determination of the circuit court. *State v. Zachodni*, 466 N.W.2d 624 (S.D.1991); *see also State v. Byrd*, 398 N.W.2d 747 (S.D.1986). The first question is whether the circuit court properly defined the standard of "probable cause." We hold that it did.

### Retroactivity of SDCL 20–13–1.1

[¶ 17.] Groff argues SDCL 20–13–1.1 establishes the "probable cause" standard of proof as "preponderance of the evidence," and the statute should be applied retroactively to this case. We disagree with the latter assertion.

[¶ 18.] First, there is nothing in SDCL 20–13–1.1 which directs retroactive application. SDCL 2–14–21 states: "No part of the code of laws enacted by § 2–16–13 shall be construed as retroactive unless such intention plainly appears." We have consistently upheld the directive of the statute. *See State of Minn. ex rel. Hove v. Doese*, 501 N.W.2d 366 (S.D.1993); *West v. John Morrell & Co.*, 460 N.W.2d 745, 747 (S.D.1990); *Schmaltz v. Nissen*, 431 N.W.2d 657, 663 (S.D.1988).

[¶ 19.] Groff argues SDCL 20–13–1.1 is procedural and therefore falls under the exception that statutes which affect remedy or procedure as opposed to those affecting substantive rights are to be given retroactive effect. *Lyons v. Lederle Laboratories*, 440 N.W.2d 769, 770 (S.D.1989). We believe stat-

---

sioner concerning discrimination charges filed under the Civil Rights Act of 1964. *EEOC Compliance Manual*, § 1062. Erdahl also filed her charges with the EEOC, which dismissed her complaint based upon a review of the report of the Division investigator.

4.  The next step following a determination of probable cause is for the investigating official to

attempt to eliminate the discriminatory or unfair practice by conference or conciliation. SDCL 20–13–32. If that fails, and if the commission of Human Rights determines that circumstances warrant, a hearing is conducted. SDCL 20–13–35. At that point, either party may elect to proceed with a civil action in circuit court in lieu of a hearing. SDCL 20–13–35.1.

utes delineating standards of proof, because they affect the substantive rights of litigants in general, are substantive in nature, and therefore should not be applied retroactively. *Parke–Davis & Co. v. Stromsodt,* 411 F.2d 1390 (8thCir.1969); *Fitzsimons v. Frey,* 153 Neb. 124, 43 N.W.2d 531 (1950).

[¶ 20.] Groff further contends the test set forth in *Brown v. John Morrell & Co.,* 511 N.W.2d 277 (S.D.1994) should be applied. That test is:

> First, the decision to be applied nonretroactively must establish a new principal of law, either by overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed ....

*Id.* at 278 (quoting *Fisher v. Sears, Roebuck & Co.,* 88 S.D. 1, 214 N.W.2d 85 (1974)).

[¶ 21.] The *Brown* test applies when the question whether a new rule or principle of law resulting from a Supreme Court interpretation of a statute should be applied retroactively. Because we are not interpreting SDCL 20–13–1.1, in this case, the *Brown* test does not apply. We conclude SDCL 20–13–1.1 should not be applied retroactively.

### Definition of "Probable Cause"

■ [¶ 22.] The term "probable cause" as used in SDCL 20–13–28.1 denotes a standard of proof—a threshold that a claimant must meet in supporting the allegations of a charge. The circuit court defined that standard as of the time of Erdahl's claim as "an apparent state of facts found to exist upon reasonable inquiry which would induce a reasonable, intelligent, and prudent person to believe, in civil cases, that a cause of action existed." Black's Law Dictionary 1365 (4th ed. 1968). We have defined the term in other contexts. In *Zachodni,* we defined it in a criminal context:

> Although the evidence supporting a probable cause determination must be 'more than a bare suspicion,' it need not establish proof beyond a reasonable doubt or even proof by preponderance. Furthermore, each element of evidence need not be individually assessed for veracity and basis of knowledge. Rather the probable cause de-

termination is a function of 'the totality of relevant circumstances.'

466 N.W.2d at 629 (citations omitted).

[¶ 23.] We have also defined the term in the context of the advice of counsel defense to a malicious prosecution action, wherein absence of probable cause is an element the plaintiff must prove:

> When the proceedings are civil, the advice of counsel is a protection even though it consists merely of an opinion that the facts so known or believed afford a chance, *whether great or small,* that the claim asserted in civil proceedings may be upheld.

*Kaarup v. St. Paul Fire & Marine Ins. Co.,* 485 N.W.2d 802, 805 (S.D.1992) (citation omitted) (emphasis added). *See also Northern Tankers (Cyprus) Ltd. v. Backstrom,* 901 F.Supp. 72, 75 (D.Conn.1995) (plaintiff does not have to establish he will prevail but only that there is probable cause to sustain the validity of a claim); *Anderson v. Public Employes Retirement Bd.,* 134 Or.App. 422, 895 P.2d 1377, 1381 (1995) (" 'probable cause' means that 'facts and circumstances provide an objectively reasonable basis for [an] agency to proceed' "); *State v. Seventy–Seven Thousand Fourteen and No/100 Dollars,* 607 So.2d 576, 582 (La.Ct.App.1992) ("probable cause" in a civil case for a drug related forfeiture is less than a preponderance of evidence, but more than a suspicion); *Young Oil Co. of Louisiana, Inc. v. Durbin,* 412 So.2d 620, 626 (La.Ct.App.1982) (for purposes of civil recovery, "[p]robable cause is not synonymous with 'preponderance', being somewhere between 'preponderance' and 'suspicion' ").

■ [¶ 24.] We conclude that the term "probable cause" in SDCL 20–13–28.1, at the time Erdahl's claim was filed, denoted a lesser standard than "preponderance of the evidence." The circuit court's definition fits such a standard. It requires only that a reasonable, intelligent, and prudent person would have more than a suspicion, upon reasonable inquiry, that a cause of action exists, whether the chances of success on the merits is great or small. We hold the circuit court did not err in its definition of "probable cause."

### The Record Applied to the Standard

[¶ 25.] Division on the first remand concluded that even under the "probable cause" standard as defined by the circuit court, no probable cause existed to support Erdahl's claim. Whether Division correctly applied the facts to the law is a mixed question of law and fact, and as such is fully reviewable.

> [M]ixed questions of law and fact are questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.

*Permann,* 411 N.W.2d at 118 (quoting *Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66, 80 n. 19 (1982)).

[¶ 26.] If the question requires the court to "consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then the concerns of judicial administration will favor the appellate court, and the question should be classified as one of law and reviewed de novo." *Id.* at 119 (quoting *United States v. McConney,* 728 F.2d 1195, 1202 (9thCir.1984)). *See also Huck, supra.*

[¶ 27.] Division cited the following established facts in its investigative findings to support its conclusions that Groff's conduct was welcomed and did not constitute "quid pro quo."

1. Erdahl sent Groff roses on 1/25/94.

2. Erdahl's former boyfriend testified that Erdahl dated Groff.

3. Erdahl sent Groff a birthday card.

4. Erdahl and Groff engaged in a romantic sexual relationship.

5. Eighteen different witnesses were aware that Groff and Erdahl were "dating," and had some type of personal relationship.

6. Erdahl's own witness testified that Erdahl said she was "not having sex with him often enough."

7. Erdahl invited Groff to her parent's home.

8. Erdahl visited Groff at his house all while she allegedly was offended or did not welcome his attention.

9. Most employees (or former employees) interviewed or questioned indicated that Erdahl had plenty of work to do after their relationship terminated.

10. Erdahl's job description, duties and pay did not change after the relationship ended.

[¶ 28.] The circuit court on the second appeal pointed out established or uncontroverted facts on the record which supported Erdahl's claim:

1. Testimony of N.A., a friend of Erdahl's: When N.A. suggested to Groff that Erdahl be hired, Groff said, "How could I not, with legs like that?" and afterward continued to comment on Erdahl's legs.

2. On one occasion, Erdahl tried to break off the relationship; it lasted five days and it was "pure hell at work."

3. Groff ignored Erdahl and moved her desk after Erdahl terminated the sexual relationship. Groff told her "Why should I share the intensity of my work when I get nothing in return?"

4. Testimony of S.P., a former legal secretary: Groff hired women because of their looks. Good looking women in the office received preferential treatment. Groff used power to control people.

5. Testimony of J.R., Erdahl's former boyfriend: In January or February, 1994, Erdahl complained that Groff was controlling her life. If Erdahl did not go out with Groff or do what he wanted, he would be "tough on her" at work, and would treat her badly by not giving her work to do and by not speaking to her.

6. Testimony of L.M., former legal secretary: Groff excluded Erdahl from other attorneys. In late January, Erdahl spoke of trying to get away from Groff. After this, Groff did not give her any

work and told other attorneys not to give her work either.

7. Testimony of G.B., Deputy State's Attorney: Groff was unhappy about the breakup with Erdahl. He suspected that the moving of Erdahl's desk may have been connected to the breakup. Near this time, the type of work she was doing changed. She also discontinued working for Groff.

8. Testimony of J.H., legal secretary: Contemporaneously with the events in question, Erdahl only got the good jobs when she slept with Groff. Erdahl related that Groff was going to Dallas [on the same airplane as Erdahl] and "she did not appear happy about this." After Groff and Erdahl broke up, Erdahl was pulled off the high profile cases.

9. Testimony of S.R., Deputy State's Attorney: In April of 1994, Erdahl commented she did not want to see Groff any more, and that she wanted a professional relationship. Erdahl was very nervous and tense about her job. She seemed to be apprehensive about how not seeing Groff any longer would affect her job and their working relationship. After the breakup, Erdahl's desk was moved, and she was taken off the high profile cases.

10. Testimony of S.T., former legal secretary: After the relationship between Groff and Erdahl ended, Groff's behavior towards her changed. He avoided Erdahl and would not speak to her. She was taken off his cases.

[¶ 29.] Groff argues the facts as found by the Division investigator should not be set aside unless found to be clearly erroneous. *See, e.g., Lien v. Miracle Span Corp.,* 456 N.W.2d 563 (S.D.1990); *Bonnett v. Custer Lumber Corp.,* 528 N.W.2d 393 (S.D. 1995). Whether the activities complained of were unwelcome is ordinarily a question of fact. *Moylan v. Maries County,* 792 F.2d 746 (8thCir.1986); *Meritor Savings Bank,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49.

[¶ 30.] We agree with Groff's general proposition that findings of fact should not be set aside unless clearly erroneous. However, we are not reviewing whether the record

supports the findings of historical fact which were made; Division incorporated the testimony of all witnesses in its determination of no probable cause as findings of fact. We are instead determining whether the uncontroverted facts or the facts as established satisfy the legal standard of proof, which is a mixed question of law and fact, reviewable de novo.

## CONCLUSION

[¶ 31.] We conclude there is evidence in the record, viewed in its totality, to support a conclusion which is more than a suspicion that a claim may exist. Whether the chance of success on the merits is great or small is of no consequence at this stage of the proceedings.

[¶ 32.] The circuit court is affirmed and the case is remanded to the Division for further proceedings.

[¶ 33.] MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.

[¶ 34.] STEELE, Circuit Judge, for KONENKAMP, J., disqualified.

