1999 SD 33

**ESTATE OF Robert G. JETTER, Deceased.**

**No. 20598.**

Supreme Court of South Dakota.

Argued Dec. 2, 1998.

Decided March 17, 1999.

Gregory A. Eiesland and Michael P. Reynolds, Quinn, Eiesland, Day & Barker, LLP, Rapid City, for appellants German heirs of Robert G. Jetter.

Ronald C. Aho, Brookings, for appellants heirs of Frances Schwab Jetter.

Joseph M. Butler and Allen G. Nelson of Bangs, McCullen, Butler, Foye & Simmons, LLP, Rapid City, for appellees heirs of John Carl Jetter.

STEELE, Circuit Judge.

[¶ 1.] Cousins of the decedent appeal the trial court's determination of heirship in this probate matter. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] Many of the facts relevant to this appeal were originally recited in the *Matter of Estate of Jetter*, 1997 SD 125, 570 N.W.2d 26 (*Jetter I*), and will not be repeated here; only those facts necessary to this disposition will be reiterated.

[¶ 3.] Robert G. Jetter (Robert) and his brother Martin were lifelong bachelors who farmed and ranched together in Haakon County. In 1981 Robert contacted an attorney to have a will prepared leaving his entire estate to Martin. The third provision of the will provided:

I have intentionally omitted all of my heirs and all other persons whomsoever, who are not specifically mentioned herein, and I hereby generally and specifically disinherit each and all persons whomsoever claiming to be my heirs-at-law and each and all persons whomsoever who, if I died intestate, would be entitled to any part of my estate except as those herein provided for.

[¶ 4.] Martin contacted the same attorney the following year, and executed a nearly identical will, leaving everything to Robert. Martin died in 1990, at which time Robert was incompetent. Upon Robert's death in 1996, his 1981 will was admitted into probate, and the personal representative petitioned for a determination of heirship.

[¶ 5.] The contestants at the hearing were cousins claiming through Robert's mother, Frances Schwab Jetter (Schwab heirs); nieces and nephews claiming through an alleged half-brother, John Carl Jetter (Jetter heirs), and the State of South Dakota (State). The State claimed that because Robert's will contained no residuary clause, and because he specifically disinherited all persons claiming as intestate heirs in item III of the will, that the entire estate escheated. The trial court held that item III of Robert's will made an ineffective disposition of his property, denied the State's escheat claim, and directed that the property be distributed according to the laws of intestate succession.

[¶ 6.] The State appealed the trial court's decision, which was addressed in *Jetter I*. This Court held that the language contained in item III of the will was designed simply to prevent any person from claiming as a pretermited heir, and did not operate as an effective disposition of property. We further agreed with the trial court's conclusion that the estate "passes to the intestate heirs" *Jetter I*, 1997 SD 125 at ¶ 34, 570 N.W.2d at 33, and remanded the case for completion of the probate proceedings.

[¶ 7.] On remand, cousins residing in Germany and claiming through Robert's father, (German heirs) joined in the proceeding to determine heirship. The German heirs had not been notified of the previous estate proceedings. The parties at the hearing on remand were the Jetter heirs, the Schwab heirs, and the German heirs. The Schwab heirs and the German heirs contended that the Jetter heirs 1) should not be held to be

the heirs of Robert; and 2) if they were determined to be heirs, then the extrinsic evidence establishes that Robert intended to disinherit them in item III of his will.

## ISSUES

[¶ 8.] I. Did the trial court err in determining that John Carl Jetter was a half-brother of Robert Jetter, and that therefore the Jetter heirs were intestate successors?

[¶ 9.] II. Did the trial court err in determining that item III of Robert's will did not operate to disinherit the Jetter heirs?

[¶ 10.] We hold that the trial court did not err in either determination.

## STANDARD OF REVIEW

 [¶ 11.] We review a trial court's findings of fact under the clearly erroneous standard. *Estate of O'Keefe*, 1998 SD 92, 583 N.W.2d 138; *Landstrom v. Shaver*, 1997 SD 25, 561 N.W.2d 1.

Under the clearly erroneous standard, the question for this Court is not whether we would have made the same findings that the trial court did, but, whether on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed. That this Court may have found the facts differently had we heard the testimony is no warrant for us to substitute our judgment for the trial court's carefully considered findings.

*Estate of Long*, 1998 SD 15, ¶ 9, 575 N.W.2d 254, 256; *In re Guardianship and Conservatorship of Lanning*, 1997 SD 81, ¶ 9, 565 N.W.2d 794, 796.

 [¶ 12.] Questions of law, including statutory construction are reviewed de novo. *Estate of O'Keefe*, 1998 SD 92, ¶ 7, 583 N.W.2d 138, 139; *Lustig v. Lustig*, 1997 SD 24, ¶ 5, 560 N.W.2d 239, 241; *Jetter I*, 1997 SD 125, ¶ 10, 570 N.W.2d at 28; *West Two Rivers Ranch v. Pennington County*, 1996 SD 70, ¶ 6, 549 N.W.2d 683, 685. Mixed

questions of law and fact are fully reviewable. *Erdahl v. Groff*, 1998 SD 28, ¶ 15, 576 N.W.2d 15, 21; *Tieszen v. John Morrell & Co.*, 528 N.W.2d 401, 403–404 (S.D.1995). Our standard of review of evidentiary rulings is well established:

'For us to disturb the evidentiary rulings of the circuit court, we must determine that an abuse of discretion has occurred. Once again, an abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.'

*State v. New*, 536 N.W.2d 714, 718 (S.D.1995) (citations omitted); *State v. Moriarty*, 501 N.W.2d 352, 355 (S.D.1993) (quoting *State v. Devall*, 489 N.W.2d 371, 374 (S.D.1992) (citations omitted)).

## DECISION

### ISSUE I

 [¶ 13.] The Jetter heirs contend that they are Robert's nieces and nephews as children of John Carl Jetter (Johnnie), an alleged deceased half-brother. The other heirs argue that the proof is insufficient to establish that Johnnie was in fact a half brother of Robert. The Jetter heirs contend that Johnnie's father was born in Germany in 1873, and that Johnnie was born to him out of wedlock in 1899. The father then immigrated to the United States in 1900. Johnnie joined his alleged father in the United States in 1922.

 [¶ 14.] Central to the proof offered by the Jetter heirs is a "Sworn Statement Submitted by Relative of Arriving Passengers" dated the 6th of May 1922, a steamship passenger document, wherein the father of Johnnie acknowledged him as his son before a notary public.[1] The steamship document was offered under SDCL 29A–2–114[2], and the trial court found it to be authentic under the standards of SDCL 19–17–1. Corroboration of authenticity included the apparent age of the document itself; it was acknowledged

---

1. We review documentary evidence under the de novo standard. *First Nat. Bank of Biwabik, Mn. v. Bank of Lemmon*, 535 N.W.2d 866 (S.D.1995).

2. SDCL 29A–2–114 "[T]he identity of the father may be established ... by a written acknowledgment by the father during the children's lifetime."

by a notary public; the document was mailed to Johnnie by a banker-notary public; the signature was similar to other authenticated specimens of the father's signature; the writing style; and, the document was found in a closet among other of Johnnie's personal belongings.

[¶ 15.] The Schwab and German heirs contend that even if the steamship document is genuine, that it fails because it's purpose was not specifically to establish paternity, pointing out that it was executed shortly after World War I, and could have been for the purpose of aiding Johnnie's passage to the United States. In *Moen v. Moen*, 16 S.D. 210, 92 N.W. 13 (1902), under a more restrictive predecessor statute, this court stated that such an acknowledgment should be "liberally construed with a view to effect its objects and to promote justice." *Moen*, 16 S.D. at 215, 92 N.W. at 15. There is no requirement in SDCL 29A–2–114 that an acknowledgment be made for any particular purpose, or be created with any intent that it will be used for establishing paternity. The trial court found other evidence establishing the sibling relationship between Robert and Johnnie, including the fact that Robert himself acknowledged to the attorney who drafted his will that Johnnie was his half-brother.

[¶ 16.] Based upon the record, we cannot conclude that the trial court was clearly erroneous in determining that Johnnie was, in fact, Robert's half-brother. That being the case, the Jetter heirs are intestate successors.

## ISSUE II

[¶ 17.] The Schwab and German heirs argue that even if Johnnie was Robert's half-brother, the evidence compels a determination that Robert intended to disinherit the Jetter heirs. They base their contention on the fact that Robert specifically told his attorney to disinherit all of Johnnie's children, and their conclusion that item III of the will was meant to effectuate that purpose.

[¶ 18.] The trial court, and this Court in *Jetter I*, determined that item III of the will was ambiguous and that extrinsic evidence was admissible for purposes of construing Robert's intent. We held that item III of the will did not operate to cause an escheat to the State, and did not effectively dispose of Robert's property. We concluded that the estate passed to the intestate heirs by operation of SDCL 29A–2–604(b),[3] and remanded to the trial court for completion of the probate proceeding. *Jetter I*, 570 N.W.2d at 33.

[¶ 19.] On remand, the Schwab and German heirs asked for a ruling that Robert intended in item III of his will to disinherit the Jetter heirs. We have already held in *Jetter I* that item III was merely a recitation which was intended to foreclose potential claims by pretermited heirs against Robert's estate, and did not operate to dispose of property. When Martin predeceased Robert, the estate passed by intestate succession. We therefore conclude that the Schwab–German heirs are foreclosed from relitigating the issue of the meaning of item III of the will by operation of the doctrine of the law of the case.

[¶ 20.] The doctrine of the law of the case is a discretionary policy practiced by the courts in which they will generally refuse to reconsider a matter which has already been decided in earlier stages of the litigation. *Agostini v. Felton*, 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). *Western States Land & Cattle Co. v. Lexington Ins.*, 459 N.W.2d 429, 435 (S.D.1990); *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 260 (S.D. 1976). The utility of the policy is "(1) to protect settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end." *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1331 (1995) (citing 21 CJS *Courts* 149A); *American State Bank v. List–Mayer*, 350 N.W.2d 44 (S.D.1984).

---

3. SDCL 29A–2–604 (b) provides:
 A residuary devise that fails for any reason passes to the testator's heirs unless the residue is devised to two or more persons, in which event the failed devise passes to the other residuary devise, or to other residuary devisees in proportion to the interest of each in the remaining part of the residue.

[¶ 21.] The doctrine of the law of the case is not a rigid rule, and will not be invoked on a second appeal if the prior decision is "palpably erroneous" and if it "is competent for the court to correct it on the second appeal." *Gamble v. Keyes*, 49 S.D. 39, 206 N.W. 477, 478 (1925). " 'The law of the case' does not rigidly bind a court to its former decisions, but is only addressed to its good sense." *Higgins v. California Prune and Apricot Grower, Inc.*, 3 F.2d 896, 898 (2nd Cir.1924). Generally, the rule is applied to issues litigated in the same case by the same parties. *Verzuh v. Rouse*, 660 P.2d 1301, 1303 (Colo.App.1982); *Topps–Toeller, Inc. v. City of Lansing*, 47 Mich.App. 720, 209 N.W.2d 843, 849 (1973).

[¶ 22.] The German heirs contend that the law of the case doctrine should not be applied because 1) they were not notified of, and did not participate in, the first trial or appeal; and 2) they presented new evidence at the second hearing which should change the result of the first appeal. We disagree.

[¶ 23.] Although the doctrine of the law of the case generally applies to final decisions involving the same parties in the same case, *Verzuh v. Rouse*, 660 P.2d at 1303 the "same party" requirement is subject to exception in the proper circumstance. For instance, in *Disimone v. Browner*, 121 F.3d 1262 (9th Cir.1997), the court invoked the doctrine even though the petitioners in the case at bar were different from the petitioners in the prior case, holding:

> Similarly, the fact that different citizen petitioners brought the present suit need not preclude application of the law of the case doctrine because both suits were brought against the same agency, about the same issue, and on behalf of the same citizen population.

*Id.*, 121 F.3d at 1267.

[¶ 24.] In *Zdanok v. Glidden Company, Durkee Famous Foods Division*, 327 F.2d 944 (1964), two consolidated cases raised the issue of construction of a contract. Judge Friendly wrote:

> Despite the difference in parties plaintiff, we would entertain no doubt that the construction of the contract announced in the appeal in the Zdanok action, to which we adhere in that action, ought to be applied in the Alexander action also if 'the case' remained the same in other respects. Since the doctrine of the law of the case is addressed to the Court's 'good sense,' we see no reason why it should be peremptorily excluded because of the presence of new parties when the party against whom it is invoked was fully heard on a prior appeal, any more than it must be rigidly applied whenever the parties remain the same.

*Id.* 327 F.2d at 953.

[¶ 25.] This situation is atypical in that the German heirs joined the proceedings after the case was remanded for the purposes of determining who the intestate heirs were. The interests of the Schwab heirs and the German heirs are exactly aligned in this case. Both sets of heirs are within the same degree of consanguinity, and would inherit equally if the Jetter heirs were determined not to be entitled to distribution. Both took identical positions before the trial court and on this appeal. Therefore, the mere fact that the German heirs are new parties to this appeal does not of itself mean that the law of the case doctrine should not be invoked.

[¶ 26.] The German heirs contend that they elicited important "new evidence" at the second hearing concerning the construction of item III of Robert's will. The testimony was that of Craig Hanrahan, a friend of Robert's, who stated in a prehearing affidavit that Robert advised the lawyer drafting the will that he intended to disinherit the Jetter heirs *whether or not* his brother Martin predeceased him. Hanrahan's testimony at the hearing, however, was that there was never any discussion one way or the other as to what was to happen if Martin predeceased Robert. He further testified at both hearings that Robert's will was meant to be temporary and that another will would be executed after an estate plan was considered. The trial court concluded that Hanrahan offered nothing new at the second hearing, and we agree.

[¶ 27.] A court may reopen a previously resolved question if the evidence on remand is substantially different or if a manifest injustice would otherwise result. *Thom-*

260

as v. Bible, 983 F.2d 152, 155 (9th Cir.1993). Evidence on a second trial must be substantially different from the former case to preclude application of the law of the case doctrine. *Stoner v. State Farm Mutual*, 856 F.2d 1195, 1197 (8th Cir.1988). The burden is on the moving party to show facts which are materially or substantially different. *Talle v. Neb. Dept. of Social Services*, 253 Neb. 823, 572 N.W.2d 790, 795 (1998). The German heirs were given their day in court because at the second hearing the trial court admitted all of the evidence proffered, and entered findings based on the evidence presented solely at that hearing. The trial court specifically held that based on the extrinsic evidence and the wording of item III of the will, that Robert intended to disinherit his intestate heirs *only* if Martin survived him. The will was meant to be a temporary one; at the time the will was drafted Robert simply did not consider what was to happen if Martin predeceased him, and made no provision for that contingency in his will. Those findings are not clearly erroneous and there is no error of law.

[¶ 28.] Had the Schwab and German heirs presented any substantially new evidence at the second hearing, we would have been less inclined to apply the law of the case doctrine. None was, and the issue now being litigated was resolved on the first appeal. "When a case is retried under a rule we dictate on appeal, that rule becomes the law of the case." *Estate of Ohrt*, 550 N.W.2d 181, 186 (Iowa App.1996) (citing *Hillrichs v. Avco Corp.*, 514 N.W.2d 94, 101 (Iowa 1994)). To grant the request of the Schwab and German heirs would require us to overrule *Jetter I*. We do not find that manifest injustice will result by allowing our prior decision to stand, and therefore hold that the doctrine of the law of the case precludes the Schwab and German heirs from relitigating the meaning of item III of Robert's will.

[¶ 29.] We affirm.

[¶ 30.] AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 31.] SABERS, Justice, concurs in result.

[¶ 32.] STEELE, Circuit Judge, for MILLER, Chief Justice, disqualified.

SABERS, Justice (concurring in result).

[¶ 33.] I concur in result based on my writing and that of Circuit Judge DeVine in *Jetter I*.